[No. 27527.   Department Two.   July 13, 1939.]

THE STATE OF WASHINGTON, *Respondent,* v. RALPH
COURSER, *Appellant.*[1]

[1]Reported in 92 P. (2d) 264.

Ralph Courser, pro se.

B. *Gray Warner* and *John Caughlan,* for respondent.

SIMPSON, J. — October 24, 1938, defendant Ralph Courser was convicted in the superior court of King county of robbery and attempted robbery. Shortly thereafter and before judgment and sentence were imposed, the prosecuting attorney filed a supplementary information charging defendant under Rem. Rev. Stat., § 2286 [P. C. § 8721], with being an habitual criminal. The supplemental information charged the defendant with having been previously convicted of the crime of grand larceny in the superior court of King county January 24, 1930, and of the crime of attempted robbery in the same court December 29, 1931.

Defendant pleaded not guilty to the charges contained in the supplemental information. He was tried to a jury, found guilty, and sentenced to life imprisonment. He has appealed from that judgment and sentence. Appellant assigns error on the part of the trial court in the denial of the motion for a new trial.

Appellant was unable, because of his financial condition, to procure counsel to defend him, and the court appointed a member of the Seattle bar to represent him at the trial. Appellant urges that his attorney was, because of lack of experience, incompetent to represent him properly during the trial of the case. The record before us does not disclose the attorney's length of service nor his experience or lack of experience in trials. However, an examination of the record leads us to agree with the trial court that appellant was properly and ably represented during the trial of the case, and in all proceedings relating thereto.

The next error presented is the introduction in evidence of the records of the state penitentiary and of the state reformatory.

■ In order to establish prior convictions and to identify the appellant as the individual convicted, the respondent adopted the identical procedure followed during the trial in the case of *State v. Johnson,* 194 Wash. 438, 78 P. (2d) 561, save in the instant case the superintendents' signatures were not certified by any official's certificate.

The certified copies of the judgments in the two other cases were admitted in evidence without objection. Then, in order to identify defendant as having been in prison in the penitentiary and in the reformatory, the state introduced, over the objection of appellant, exhibits 3 and 4, being copies of fingerprint records and pictures of appellant certified by J. M. McCauley, as warden or superintendent of the state penitentiary, and George W. Roup, as superintendent of the Washington state reformatory, respectively.

■ Appellant's contention is that the superintendents of the two penal institutions are not charged with the keeping of fingerprint records and are not custodians thereof.

It is true that our statutes do not, in so many words, authorize the superintendents of the penitentiary and reformatory to take and keep, as part of their official files and records, pictures and fingerprints of the inmates of those institutions. However, the statute governing the penitentiary does, in effect, authorize the superintendent to make and retain such records.

Rem. Rev. Stat., § 10213 [P. C. § 4365], states:

"The superintendent shall reside at the penitentiary in a house provided and furnished at the expense of the state, as may be ordered by the board, and it shall be his duty—  . . .

"2. To supervise the government, discipline, and police of the penitentiary, and to enforce all orders and regulations of the board in respect to the penitentiary. He shall keep a registry of the convicts, in which shall be entered the names of each convict, the crime for which he is convicted, the period of his sentence, from what county sentenced, by what court sentenced, his nativity, to what degree educated, an accurate description of his person, and whether he has previously been confined in a prison in this or any other state, and if so where, and how he was discharged; . . ."

Likewise, the director of business control and the superintendent of the state reformatory are entrusted with the exercise of discretion requisite to the orderly conduct of the affairs of the institution. Photographs and fingerprints of inmates may be kept incident thereto.

The statutes, Rem. Rev. Stat., §§ 10280-1 to 10280-16 [P. C. §§ 6739-1 to 6739-16], governing the state reformatory, do not outline the duties of the superintendent of that institution, but leave its management and control to the director of business control, and therefore appellant urges that a certified record in the custody of the reformatory must be signed by the director to be admissible.

The earlier statutes, Rem. & Bal. Code, §§ 8577, 8580, 8590, and 8593, were, in all material respects, like the existing statutes in that there was no express provision for the taking of photographs and fingerprints of inmates, and neither the duties nor the authority of the superintendent were outlined or defined. The former statutes differed from the existing ones in that they entrusted the management and control of the institution to a board of managers.

In *Hodgeman v. Olsen,* 86 Wash. 615, 150 Pac. 1122, L. R. A. 1916A, 739, this court had occasion to interpret the old statute as it related to the duty and authority

of the superintendent of the reformatory to secure and retain as part of the records of the institution photographs and certain definite descriptions of persons sentenced to it. This court, speaking through Judge Ellis, stated, after reciting the provisions of the old statute:

"It is manifest from these provisions, and indeed from the entire statute, that the legislature has made no attempt to lay down a complete system of specific rules and regulations for the management of the institution or the care and treatment of the inmates, but has only undertaken to outline the powers and duties of the board of managers and superintendent in the broadest of terms. It is obvious that, if these officers were required to look to the statute for specific rules of conduct, they would find none. They would be powerless to inaugurate any adequate system for carrying out the general powers conferred or performing the duties so broadly imposed. The legislature has deemed it inexpedient to attempt any promulgation of specific rules, doubtless because of their necessary manifold scope and because to do so would, on the principle *expressio unius exclusio alterius,* deny to the officers in charge the power to employ those means which practical experience might demonstrate as best calculated to meet the full purpose of the law. It would be practically impossible to enumerate in the statute all of the powers necessary to the management of such an institution and the control of its inmates. By conferring general powers and imposing general duties, the legislature has, by necessary implication, accorded to the officers in charge all those powers which experience has proven necessary and such as are customarily employed in the management of penal institutions. In this connection we call attention to the fact that the legislature has been little more specific in promulgating rules for the penitentiary than it has for the reformatory. (2 Rem. & Bal. Code, Title LXVIII, ch. 2.) In both statutes there is left, by necessary implication, a wide latitude of discretionary power to the officers in charge.

"It is a matter of common knowledge, of which this

court cannot feign ignorance, that the taking and preservation of photographs, physical measurements and characteristics of prisoners is a measure adopted in nearly all penal institutions. This is not only necessary in order to facilitate the recapture of escaped prisoners and the investigation of their past records, and personal history, expressly made incumbent by the reformatory statute, but is also necessary to preserve the means of identification for that future supervision after discharge which, by the very theory of reformatory restraint, is assumed by the state for the prisoner's good, as it is for the protection of society in all cases of prisoners discharged from any penal institution whether reformatory or not. The protection of society, whether by reformation or punishment, is the real end in any case. As an aid to the enforcement of our habitual criminal law, the preservation of such data is an obvious necessity. The legislature is also presumed to have had this common knowledge when it passed the reformatory act. By failing to prohibit these commonly employed measures and by imposing general duties to which their use is plainly an appropriate aid, it has, by implication, conferred upon the officers in charge the power to continue their use as a part of the ordinary powers of management. Had such measures been deemed inimical to the benign purpose of the reformatory law, as is strenuously asserted by the appellant, the legislature would certainly have so declared."

What this court said in that opinion in respect to the powers and duties of the superintendent of the state reformatory under the old statute, applies with equal force to the superintendents of both the state reformatory and the state penitentiary.

We consider now whether the signatures appearing on the certificates attached to exhibits 3 and 4 are sufficient to establish their authenticity.

Rem. Rev. Stat., § 1257 [P. C. § 7776], reads:

"Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state, when duly certified by

the respective officers having by law the custody thereof, under their respective seals, where such officers have official seals, shall be admitted in evidence in the courts of this state."

Appellant contends, however, that, notwithstanding the above-mentioned statute, exhibits 3 and 4 should have been excluded, for the reason that the signatures of the superintendents should be duly authenticated to safeguard against spurious documents and falsified records.

It may be observed that no statute prescribes any given form of certificate for certifying a document or record in the custody of the superintendents of the state penitentiary and reformatory.

The question of the genuineness of the signatures on certificates signed by a public officer was announced in *State v. Christensen,* 122 Wash. 236, 210 Pac. 376, by the following statement:

"It is within the power of the legislature to prescribe what authentication of a document is sufficient to make it admissible as evidence, and when it prescribes that a certified transcript from the docket of any justice of the peace is sufficient evidence and proof, the courts need look no farther than the formal certificate of the justice. It is, of course, but *prima facie* proof, and is subject to attack on grounds that any other authenticated document may be attacked, but it is sufficient on its face."

This court held in *State v. Johnson,* 122 Wash. 394, 210 Pac. 774, that a certified copy of the official records of deaths, made and kept in compliance with our statute relative to vital statistics, was admissible within the purview of § 1257, *supra.*

The rule laid down in the above case was approved in *State v. Bolen,* 142 Wash. 653, 254 Pac. 445, in which case it was stated:

"It has also been held by the courts that certain acts, records and documents required to be done or kept by certain public officers in pursuance of their duties will be received in evidence without extrinsic testimony concerning their genuineness or correctness. On a charge of forgery of the name of the supposed maker of a power of attorney, the state offered in evidence a certified copy of the official record showing that the person who was supposed to have signed the document died on the date of its purported execution. Statutes provided that records of deaths be kept by certain persons. This court held that a certified copy of this record was admissible in evidence without further proof concerning it. *State v. Johnson,* 122 Wash. 394, 210 Pac. 774."

The certificates of the superintendents were regular on their faces and *prima facie* proved their contents.

The courts of the United States recognize the public officers of a state, the seals and signatures of the governor, of the heads of the departments, and of the principal officers of the state government, and will take judicial notice of the persons occupying those positions and their signature to official documents.

"The signature of a public officer to any document required to be signed by him in his official capacity will be judicially taken notice of; and it has been declared that the court will take judicial notice of the official capacity of the signer, even though it is not shown by the writing. English courts take judicial notice of the signature and seal of officers appointed by the general government, such as commissioners to administer oaths." 23 C. J. 98, § 1893.

Among other authorities lending support to this conclusion we note the following: *Commonwealth v. Chase,* 60 Mass. (6 Cush.) 248; *Fisk v. Hopping,* 169 Ill. 105, 48 N. E. 323; *State v. Flory,* 198 Iowa 75, 199 N. W. 303; *State ex rel. Glenn v. Wilkinson,* 220 Ala. 172, 124 So. 211; *Gulf Refining Co. v. Frazier,* 19 Tenn.

App. 76, 83 S. W. (2d) 285; *Toler v. Mobley,* 43 Ga. App. 745, 159 S. E. 887; *State ex rel. Myers v. Blake,* 121 Ohio St. 511, 169 N. E. 599; *Keyser v. Hitz,* 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; *Roth v. Baldwin,* 74 F. (2d) 1003.

From the official roster of state and county officers, compiled by the secretary of state and of which we may take judicial notice (*Butts v. Purdy,* 63 Ore. 150, 125 Pac. 313, 127 Pac. 25), we learn that James M. McCauley is superintendent of the Washington state penitentiary and that George W. Roup is superintendent of the Washington state reformatory.

The evidence supplied by the admission of exhibits 3 and 4 established a *prima facie* case, and no further evidence was necessary to prove that James M. McCauley, as superintendent of the state penitentiary, and George W. Roup, as superintendent of the state reformatory, in their official capacities had signed their respective certificates. The exhibits were properly introduced in evidence.

Finding no error, we affirm the judgment.

BLAKE, C. J., GERAGHTY, MILLARD, and JEFFERS, JJ., concur.