[Nos. 75984-7; 75989-8;    En Banc.]
76081-1; 76077-2.
Argued October 25, 2005.    Decided January 25, 2007.

THE STATE OF WASHINGTON, *Petitioner*, v. DAVID NIKOS PILLATOS, *Respondent*.

THE STATE OF WASHINGTON, *Petitioner*, v. SCOTTY JAMES BUTTERS, *Respondent*.

THE STATE OF WASHINGTON, *Respondent*, v. DANIEL WILLIAM BASE, *Petitioner*.

THE STATE OF WASHINGTON, *Petitioner*, v. JAMES CARL METCALF, *Respondent*.

462

464

*Randall R. Hall* (of *Northwest Defenders Association*), for petitioner Base; *Sheryl G. McCloud*, for respondent Pillatos; *John H. Hill III*, for respondent Butters; and *David N. Gasch*, for respondent Metcalf.

*Gerald A. Horne, Prosecuting Attorney for Pierce County*, and *Kathleen Proctor* and *John M. Sheeran, Deputies; Norm Maleng, Prosecuting Attorney for King County*, and *Ivan Orton, Deputy*; and *Steven J. Tucker, Prosecuting Attorney for Spokane County*, and *Kevin M. Korsmo, Deputy*, for the State.

¶1 ALEXANDER, C.J. — We originally took review of these cases to decide whether, in the wake of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), juries in Washington could be asked to find facts that might justify an upwards departure from standard-range sentences. Shortly after the initial oral argument, the Washington State Legislature amended the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, to explicitly give juries this responsibility. LAWS OF 2005, ch. 68.[1] We permitted additional argument and briefing to aid us in determining whether this new act applies to any of these cases.

¶2 We hold that Laws of 2005, chapter 68 applies to all sentencing proceedings held since it was signed into law by Governor Gregoire on April 15, 2005. Thus, the State may seek exceptional sentences against Base and Metcalf, whether they ultimately plead guilty or go to trial. However, since Butters and Pillatos had each pleaded guilty prior to the effective date of the new statute, the procedures set forth in that statute do not apply to them. We hold, additionally, that we lack the power to fashion a remedy to empanel juries. Accordingly, the State may not seek exceptional sentences against Butters and Pillatos.[2]

I

¶3 *Pillatos & Butters*. David Nikos Pillatos and Scotty James Butters each pleaded guilty to first degree murder and are awaiting sentencing. According to charging documents, on March 23, 2003, along with two acquaintances, Butters and Pillatos attacked Randall Townsend near

---

[1] Portions of this act are codified as RCW 9.94A.537; others amend RCW 9.94A.530 and RCW 9.94A.535. For ease, we refer to it by its session law designation.

[2] During our consideration of these consolidated cases, the United States Supreme Court determined that *Blakely* sentencing violations are not structural errors and, thus, can be subject to harmless error analysis under federal law. *Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). We acknowledge the potential importance of that ruling on application of Washington's criminal sentencing scheme. However, we find no basis upon which to review that decision's application to these cases given that Pillatos and Butters have yet to be sentenced.

Wright Park in Tacoma. Collectively, they savagely beat Townsend and left him for dead on train tracks. Despite quickly summoned medical assistance, Townsend died in Harborview Hospital about two weeks later.

¶4 The Pierce County prosecutor charged Butters and Pillatos with aggravated first degree murder and, apparently, considered seeking the death penalty. After significant negotiations, Pillatos and Butters both pleaded guilty to an amended charge of first degree murder. During negotiations leading to the pleas, the parties agreed that the State could seek exceptional sentences, and the plea agreement was reached with that understanding.[3] Before accepting their pleas, a superior court judge confirmed that each man understood that the maximum sentence they could receive, if an exceptional sentence was imposed, was life in prison.

¶5 After the pleas were accepted, but before sentencing, the United States Supreme Court published its watershed *Blakely* opinion. *See Blakely*, 542 U.S. 296. Under *Blakely*, the State must prove to the trier of fact, beyond a reasonable doubt, facts supporting an exceptional sentence. *Id.* at 313. Consequently, the State moved to empanel a sentencing jury. The defendants opposed the motion.

¶6 The primary argument that Butters and Pillatos presented was that after *Blakely*, facts supporting exceptional sentences must be set forth in the information. Since they had already pleaded guilty, they averred amendment of the information was inappropriate. They also argued that the trial court lacked the power to empanel a sentencing jury. The sentencing judge agreed that she did not have the power to create procedures to bring the SRA into conformity with *Blakely*. The State sought discretionary review of that decision and we granted review.

¶7 *Base*. Daniel William Base operated a magazine subscription business. He was investigated for financial impro-

---

[3] Butters' standard range sentence was 281-374 months. The parties dispute Pillatos' offender score; his standard range sentence could have been as low as 271 months and as high as 374.

prieties related to that business. Base eventually entered into an agreement with the Washington State attorney general in which he agreed to refund wrongfully collected payments to tens of thousands of customers. Some time later, finding Base's remedial steps inadequate, the King County prosecutor charged Base with one count of first degree theft, alleging that Base improperly collected or handled money from more than 50,000 victims. The prosecutor informed Base that he intended to seek an exceptional sentence under RCW 9.94A.535(3)(d) on grounds that Base had committed a major economic offense given the number of victims and the large amount of money alleged to have been wrongfully appropriated. The State sought an 84-month exceptional sentence, as opposed to a standard range sentence of up to 90 days.

¶8 After *Blakely*, the prosecutor sought to have aggravating factors submitted to the jury if Base were found guilty. A King County Superior Court judge concluded that he possessed the inherent authority to empanel a sentencing jury. Prior to either trial or plea, Base sought discretionary review of that decision and we granted review.

¶9 *Metcalf*. James Metcalf was charged with the second degree murder of Denise McCormick. After *Blakely* was filed, the State moved to amend the information to add three statutory aggravating factors: that the crime was committed "with sexual motivation," that Metcalf "manifested deliberate cruelty," and "that the victim was particularly vulnerable." Metcalf Clerk's Papers at 6. A Spokane County Superior Court judge permitted the State to amend the information to add the additional aggravating factor of sexual motivation, concluding that she had statutory authority to do so under RCW 9.94A.835. She declined, however, to permit the information to be amended to add the other two aggravating factors, determining that she was without authority to submit those factors to the jury. The State moved for discretionary review. We granted

review and consolidated Metcalf's case with the *Pillatos*, *Butters*, and *Base* cases.[4]

¶10 Shortly after oral argument, the governor signed Laws of 2005, chapter 68. The express purpose of this statute was to bring the SRA into accord with the United States Supreme Court's decision in *Blakely*. LAWS OF 2005, ch. 68, § 1.[5] The act added a new procedure for juries to find facts justifying exceptional sentences:

> (1) At any time prior to trial or entry of the guilty plea if substantial rights of the defendant are not prejudiced, the state may give notice that it is seeking a sentence above the standard sentencing range. The notice shall state aggravating circumstances upon which the requested sentence will be based.
>
> (2) The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts.

LAWS OF 2005, ch. 68, § 4(1), (2). The act contained an emergency clause, bringing it into immediate effect. LAWS OF 2005, ch. 68, § 7. We permitted additional argument and briefing in order to assist us in determining whether or not the statute applied to these cases.

---

[4] The State is the petitioner in three of the four cases, and the respondent in *State v. Base*. For convenience, we will refer to the defendants collectively as "defendants."

[5] The legislature found, in relevant part:

"The legislature intends to conform the sentencing reform act, chapter 9.94A RCW, to comply with the ruling in *Blakely v. Washington*, 542 U.S. [296] (2004). In that case, the United States supreme court held that a criminal defendant has a Sixth Amendment right to have a jury determine beyond a reasonable doubt any aggravating fact, other than the fact of a prior conviction, that is used to impose greater punishment than the standard range or standard conditions. The legislature intends that aggravating facts, other than the fact of a prior conviction, will be placed before the jury. The legislature intends that the sentencing court will then decide whether or not the aggravating fact is a substantial and compelling reason to impose greater punishment. The legislature intends to create a new criminal procedure for imposing greater punishment than the standard range or conditions and to codify existing common law aggravating factors, without expanding or restricting existing statutory or common law aggravating circumstances." LAWS OF 2005, ch. 68, § 1.

## II

¶11 Since these cases present only questions of law, our review is de novo. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002).

### 1. Do Our Trial Courts Have Inherent Authority To Empanel Juries?

¶12 In all four cases before us, the State asks our court to conclude that the respective trial courts had the inherent authority to empanel a jury to determine whether an exceptional sentence should be imposed. But in *State v. Hughes*, 154 Wn.2d 118, 151-52, ¶ 70, 110 P.3d 192 (2005), *overruled in part on other grounds by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006), we concluded that no such inherent authority exists. We said, " 'This court has consistently held that the fixing of legal punishments for criminal offenses is a legislative function.' " *Hughes*, 154 Wn.2d at 149, ¶ 64 (quoting *State v. Ammons*, 105 Wn.2d 175, 180, 713 P.2d 719, 718 P.2d 796 (1986)). " ' "[I]t is the function of the legislature and not of the judiciary to alter the sentencing process." ' " *Id.* (alteration in original) (quoting *Ammons*, 105 Wn.2d at 180) (quoting *State v. Monday*, 85 Wn.2d 906, 909-10, 540 P.2d 416 (1975))). We went on to say:

> This court will not create a procedure to empanel juries on remand to find aggravating factors because the legislature did not provide such a procedure and, instead, explicitly assigned such findings to the trial court. To create such a procedure out of whole cloth would be to usurp the power of the legislature.

*Id.* at 151-52, ¶ 70.

¶13 Similarly, in *State v. Martin*, 94 Wn.2d 1, 7, 614 P.2d 164 (1980), this court declined to imply a "special sentencing provision" that would allow the death penalty to apply to those who pleaded guilty, in the absence of any statutory provision allowing a jury to be empanelled following a guilty plea. We said we "[did] not have the power to read

into a statute" such a provision, and that the statute did not allow us to convene a jury solely to consider death. *Id.* at 8. Consistent with our decisions in *Hughes* and *Martin,* we conclude that trial courts do not have inherent authority to empanel sentencing juries.

## 2. Is Applying Laws of 2005, Chapter 68 to Pending Cases Improper Retroactive Application of New Law?

¶14 Laws of 2005, chapter 68, by its terms, applies to all pending criminal matters where trials have not begun or pleas not yet accepted. *See* LAWS OF 2005, ch. 68, § 4(1) ("At any time prior to trial or entry of the guilty plea . . . ."). Since Butters and Pillatos each pleaded guilty, the statute, by its terms, does not apply to them.

¶15 However, Base and Metcalf have neither pleaded guilty nor begun their trials, so the statute clearly applies to them. Therefore, we are left to decide whether applying this new statute to crimes committed prior to its signing offends general common law principles of retroactivity or other Washington law.

¶16 Generally, statutes, particularly criminal statutes, operate prospectively to give fair warning that a violation carries specific consequences. *See In re Estate of Burns*, 131 Wn.2d 104, 110, 928 P.2d 1094 (1997). But if the changes to the statute do not alter the consequences of the crime, then there is likely no relevant lack of notice. *Accord In re Pers. Restraint of Mota*, 114 Wn.2d 465, 788 P.2d 538 (1990).

¶17 We conclude that the procedural changes wrought by Laws of 2005, chapter 68 do not resemble the sort of retroactive statutes which have been found in the past to offend our constitutions. All of these defendants had warning of the risk of an exceptional sentence. At the time all of these defendants committed the crimes set forth above, Washington had a seemingly valid exceptional sentencing system which gave fair notice of the risk of receiving such a sentence. *See State v. Gore*, 143 Wn.2d 288, 313-14, 21 P.3d 262 (2001), *overruled in part by Hughes*, 154 Wn.2d 118.

¶18 On a practical level, we consider a statute to be retroactive if the "triggering event" for its application happened before the effective date of the statute. *State v. Belgarde*, 119 Wn.2d 711, 722, 837 P.2d 599 (1992) (quoting *Aetna Life Ins. Co. v. Wash. Life & Disability Ins. Guar. Ass'n*, 83 Wn.2d 523, 535, 520 P.2d 162 (1974)). A statute is not retroactive merely because it applies to conduct that predated its effective date. Instead, "[a] statute operates prospectively when the *precipitating event* for operation of the statute occurs after enactment, even when the precipitating event originated in a situation existing prior to enactment." *Burns*, 131 Wn.2d at 110-11 (emphasis added). The act clearly contemplates that either the entry of the plea or the trial is the precipitating event. Based on its plain language, the act is not retroactive in this context.

¶19 Nor does it act in a retroactive fashion, as we usually think of it. "A retrospective law, in the legal sense, is one which takes away or impairs vested rights acquired in the existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past." *Pape v. Dep't of Labor & Indus.*, 43 Wn.2d 736, 740-41, 264 P.2d 241 (1953) (citing 50 AM. JUR. *Statutes* § 476, at 492 (1944)). As Justice Stevens noted:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

*Landgraf v. USI Film Prods.*, 511 U.S. 244, 269-70, 114 S. Ct. 1483, 128 L. Ed. 2d 229 (1994) (footnote and citation omitted). Since there are no new legal consequences attached to these crimes, this statute is not retrospective.

¶20 Defendants argue that because of RCW 10.01.040, the new statutory procedures do not apply to them. That statute says, in relevant part:

> Whenever any criminal . . . statute shall be amended . . . , all offenses committed . . . while it was in force shall be punished or enforced as if it were in force, . . . and every such amendatory . . . statute shall be so construed as to save all criminal . . . proceedings, . . . pending at the time of its enactment, unless a contrary intention is expressly declared therein.

RCW 10.01.040 generally requires that crimes be prosecuted under the law in effect at the time they were committed. However, as we have held before, this statute applies only to *substantive* changes in the law, not procedural ones, like this. *State v. Hodgson*, 108 Wn.2d 662, 669-70, 740 P.2d 848 (1987) ("By its terms, [RCW 10.01-.040] saves only substantive rights and liabilities."). So, for example, when the legislature extended the statute of limitations for sex crimes against children under certain circumstances, this court found the statute applied to all prosecutions not yet tolled under the old statute. *Id.*; *accord State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139 (2004). Since at least the relevant portions of Laws of 2005, chapter 68 are merely procedural, RCW 10.01.040 does not bar their application.[6]

¶21 Analogously, we agree with the State that RCW 9.94A.345 does not bar application of Laws of 2005, chapter 68. RCW 9.94A.345, which was explicitly enacted in response to this court's decision in *State v. Cruz*, 139 Wn.2d 186, 985 P.2d 384 (1999), *superseded by statute as stated in Varga*, 151 Wn.2d 179, states that "[a]ny sentence imposed under this chapter shall be determined in accordance with the law in effect when the current offense was committed." RCW 9.94A.345; *see also* LAWS OF 2000, ch. 26, § 1 (statement of legislative intent). The legislature's express intent was to overrule *Cruz*, at least prospectively, and make clear

---

[6] Because the entirety of the statute is not before us, we are not rendering a decision about unchallenged portions of the statute.

that defendants had no vested rights in prior, more lenient, offender score calculation statutes.

¶22 In this case, both past and present law allows for exceptional sentencing. The "law in effect when the current offense was committed," reasonably read, includes the possibility of exceptional sentences, and the change in procedures does not violate the letter or purpose of RCW 9.94A.345.

¶23 Overlapping these principles is another closely related one: remedial statutes are generally enforced as soon as they are effective, even if they relate to transactions predating their enactment. *See Miebach v. Colasurdo*, 102 Wn.2d 170, 180-81, 685 P.2d 1074 (1984). "A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right." *Id.* at 181 (citing *Johnston v. Beneficial Mgmt. Corp. of Am.*, 85 Wn.2d 637, 641, 538 P.2d 510 (1975)). Remedial statutes are an exception to the general rule that statutes operate prospectively. "[I]f a statute is remedial in nature and retroactive application would further its remedial purpose," it will be enforced retroactively. *Macumber v. Shafer*, 96 Wn.2d 568, 570, 637 P.2d 645 (1981). The relevant portions of Laws of 2005, chapter 68 are remedial law, as they relate only to procedures and do not affect substantive or vested rights.

¶24 However, as the defendants properly note, even a remedial amendment will be applied prospectively only if it contradicts a previous interpretation of the amended statute by this court. *Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 558, 637 P.2d 652 (1981) (citing *Johnson v. Morris*, 87 Wn.2d 922, 557 P.2d 1299 (1976)). Defendants argue that this court's decision in *Hughes*, 154 Wn.2d 118, is such a prior interpretation.

¶25 We question this characterization of Laws of 2005, chapter 68 as constituting an overruling of our *Hughes* decision, especially given that *Hughes* was decided the same day the legislature enacted the statute. The reason underlying the *Overton* rule is separation of powers—that the legislature does not have the power to overrule judicial

interpretations of the law since it "is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L. Ed. 60 (1803). But it strains causality and the timeline to deem Laws of 2005, chapter 68 a legislative overruling of *Hughes*. The legislature had no way of anticipating our ruling at the time it debated and passed Laws of 2005, chapter 68. Furthermore, it is a stretch to read *Hughes* as an interpretation of the relevant *statutes*. Instead, as we observed above, *Hughes* was rooted in respect for the legislature's power to sculpt sentencing practices. *Hughes*, 154 Wn.2d at 151-52, ¶ 70. And we were careful to restrict the scope of our holding in *Hughes* to the type of case presented, noting that "[w]e are presented only with the question of the appropriate remedy on *remand*—we do not decide here whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial." *Hughes*, 154 Wn.2d at 149, ¶ 66. In these cases, there have been no completed sentencing proceedings; some sort of proceeding will need to be held in each case anyway.

¶26 *Hughes* explicitly left open the possibility that juries might be empaneled under different circumstances. The State contends that Laws of 2005, chapter 68 presents such a circumstance. We agree. We hold that by its terms, Laws of 2005, chapter 68 applies to all cases where trials have not begun or where pleas have not been accepted.

### 3. Is Laws of 2005, Chapter 68 Unconstitutional?

¶27 We turn now to whether applying Laws of 2005, chapter 68 to Base and Metcalf violates the constitution. We conclude it does not.

### A. *Ex Post Facto Protections*

¶28 Defendants contend that applying Laws of 2005, chapter 68 to their crimes violates the ex post facto clauses. Reduced to its essence, defendants argue that the exceptional sentence provisions of the SRA have not existed since

*Blakely* was announced and, therefore, any exceptional sentence imposed violates the ex post facto protections of both the United States and Washington Constitutions by increasing the potential punishment they are subject to. *See* U.S. CONST. art. I, § 10; CONST. art. I, § 23;[7] *cf. State v. Kane*, 101 Wn. App. 607, 613, 5 P.3d 741 (2000). We disagree with both their characterization and their conclusion.

¶29 The United States Supreme Court has consistently rejected similar claims. *See Landgraf*, 511 U.S. at 275 n.28 (collecting cases). As we noted before, considering that line of cases:

> The ex post facto clauses forbid the State from enacting laws which impose punishment for an act which was not punishable when committed or increase the quantum of punishment annexed to the crime when it was committed. U.S. CONST. art. I, § 10, cl. 1; CONST. art. I, § 23; *see Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981) (and cases cited therein). "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver*, at 30.

*In re Pers. Restraint of Powell*, 117 Wn.2d 175, 184-85, 814 P.2d 635 (1991).

¶30 A defendant is subject to the penalty in place the day the crime was committed. After the fact, the State may not increase the punishment. *In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 861, 100 P.3d 801 (2004) (citing *Stogner v. California*, 539 U.S. 607, 612, 123 S. Ct. 2446, 156 L. Ed. 2d 544 (2003)). But as we have said when considering other amendments to the SRA, the key is whether the defendant had *notice* of the punishment at the time of the crime, not whether in some metaphysical sense, a constitutional statute existed at the time of the crime. *Powell*, 117 Wn.2d at 184-85.

---

[7] The defendants do not argue that the State's ex post facto clause provides any more protection than its federal counterpart under these circumstances, and we assume without deciding that it does not.

¶31 It is also well established that the mere risk that an offender could receive a higher sentence under new procedures does not violate the ex post facto clause. *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 505, 115 S. Ct. 1597, 131 L. Ed. 2d 588 (1995). Instead, we must determine whether the new law "(1) is substantive [or] merely procedural; (2) is retrospective (applies to events which occurred before its enactment); and (3) disadvantages the person affected by it." *Powell*, 117 Wn.2d at 185. "In the context of an act already criminally punished or punishable, 'disadvantage' means the statute alters the standard of punishment which existed under the prior law." *State v. Schmidt*, 143 Wn.2d 658, 673, 23 P.3d 462 (2001).

¶32 We note that the argument that an unconstitutional statute does not, in some sense, exist, and therefore cannot justify punishment before the legislature remedies the constitutional flaw, has been raised and rejected many times in many courts. *See, e.g., Dobbert v. Florida*, 432 U.S. 282, 289, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977) (rejecting claim that defendant was not properly subject to death penalty because only an unconstitutional version was in place at the time he committed his crime); *State v. Ring*, 204 Ariz. 534, 65 P.3d 915, 928 (2003) (same); *People v. District Court*, 834 P.2d 181 (Colo. 1992) (same); *accord Collins v. Youngblood*, 497 U.S. 37, 49, 52, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990) (not an ex post facto violation to apply new statute that had the effect of allowing rescission of illegal portions of defendant's sentence even though without the statute he would have received a new trial); *Weaver*, 450 U.S. at 28-29 (purpose of ex post facto clause is to assure that "legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed"). We find these cases compelling. When a statute has been declared unconstitutional as applied to a certain set of procedures, it does not cease to exist for purposes of the ex post facto clauses. It still exists and still gives notice that certain conduct is illegal and carries certain consequences.

¶33 We hold that the ex post facto clause is not offended by application of this statute to criminal conduct committed prior to effective date.

## B. *Chilling the Right to Trial*

¶34 Defendants argue that Laws of 2005, chapter 68 unconstitutionally chills the right to a trial by subjecting a defendant to an exceptional sentence only if he or she pleads not guilty. We disagree with this interpretation of the statute.

¶35 In relevant part, the statute provides:

> (2) The facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt. The jury's verdict on the aggravating factor must be unanimous, and by special interrogatory. If a jury is waived, proof shall be to the court beyond a reasonable doubt, unless the defendant stipulates to the aggravating facts.
>
> (3) Evidence . . . shall be presented to the jury during the trial of the alleged crime . . . .
>
> (4) If the court conducts a separate proceeding to determine the existence of aggravating circumstances, the proceedings shall immediately follow the trial on the underlying conviction, if possible.

LAWS OF 2005, ch. 68, § 4(2), (3), (4). Defendants infer that since the same jury must be used for both guilt and sentencing, if no jury is used to determine guilt, no jury may be used for sentencing. *See generally State v. Frampton*, 95 Wn.2d 469, 627 P.2d 922 (1981); *Martin*, 94 Wn.2d 1 (invalidating earlier death penalty scheme that provided a mechanism for capital sentencing only when a defendant pleads not guilty).

¶36 Reading the statute as a whole, as we must, we conclude that the legislature *did* intend sentencing-juries to be empaneled even when the defendant pleads guilty. *See Campbell & Gwinn*, 146 Wn.2d at 11 (statutes are construed as a whole and the purpose of statutory construction is finding the intent of the legislature). While we recognize

that the statutory language could have been more precise, the legislature's express intent was to bring the SRA into accord with *Blakely*. LAWS OF 2005, ch. 68, § 1. In our view, the legislature meant to allow such sentencing proceedings and has done so by providing that "[t]he facts supporting aggravating circumstances shall be proved to a jury beyond a reasonable doubt." LAWS OF 2005, ch. 68, § 4(2). Nothing in that language restricts sentencing-juries to guilt-phase juries.

¶37 We conclude that the act does not limit sentencing-juries to cases where the defendant pleads not guilty. Instead, it provides specific procedures for trying aggravators to juries. Most of the language called to our attention goes to authorizing trial judges to hold separate proceedings to determine the existence of certain aggravators. Given the specific aggravators in question, it is likely the legislature was concerned about the potential prejudicial effect of certain allegations during the case in chief. *See* LAWS OF 2005, ch. 68, § 4(3); RCW 9.94A.535(3)(e)(iv) (drug kingpin), (h)(i) (long term domestic abuse), (o) (defendant has significant history of sex crimes and is not amenable to treatment), and (t) (defendant was recently released from prison), *as amended and recodified by* LAWS OF 2005, ch. 68, § 3.

¶38 We find that these statutory proceedings do not impermissibly chill the right to trial.

## 4. Are Defendants' Other Issues Ripe for Review?

### A. *Aggravator Amendments*

¶39 Defendants argue that the 2005 legislature changed the aggravating factors that may form the basis for an exceptional sentence, substantively changing the law as it existed at the time they committed their crimes. Whether or not this is true in the abstract, defendants have not shown any relevant change. Accordingly, this issue is not ripe for our review and we await a case that better presents it.

## B. *Pleading Aggravators*

¶40 Defendants assert, additionally, that they may not be subject to an exceptional sentence unless the aggravating factors are charged in the information. Laws of 2005, chapter 68, does not explicitly require such pleading of aggravators. Instead, it says that if the "substantial rights of the defendant" are not offended, notice of intent to seek an exceptional sentence may be given any time "prior to trial or the entry of a guilty plea." LAWS OF 2005, ch. 68, § 4(1).

¶41 Again, this issue is not ripe for review. We have already determined that Butters and Pillatos may not receive exceptional sentences for other reasons, as explained above. In the case of Metcalf, the information was amended three months before trial to add sexual motivation as an aggravating factor. For that reason, Metcalf argued that the pleading issue was "not germane" to his case. Resp't's Br. (Metcalf) at 5. As for Base, since he has not pleaded guilty or been to trial, the State may proceed under the provisions of the new statute, which provide that the State give notice of the aggravating circumstances upon which it relies.

## C. *Aggravators, Double Jeopardy, and Joinder*

¶42 The defendants assert, finally, that they cannot be subjected to the risk of an aggravated sentence without double jeopardy being offended and the joinder rule being violated. *See Woods v. Rhay*, 68 Wn.2d 601, 604, 414 P.2d 601 (1966) (unless withdrawn, guilty plea has same effect as conviction); CrR 4.3.1(b)(1).

¶43 Double jeopardy protects offenders from being punished twice for the same offense. *State v. Vladovic*, 99 Wn.2d 413, 422, 662 P.2d 853 (1983) (citing *Albernaz v. United States*, 450 U.S. 333, 344, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981)). This includes prosecution for the same offense after conviction. *State v. Gocken*, 127 Wn.2d 95, 100,

896 P.2d 1267 (1995). The defendants' double jeopardy claim is predicated on the theory that, post-*Blakely*, a crime with an aggravator is a *separate offense* from the crime without an aggravator. In other words, seeking an exceptional sentence *after* a defendant has pleaded guilty to a nonaggravated crime would be the functional equivalent of charging the defendant with a different degree of the same crime.

¶44 Because Pillatos and Butters are the only defendants in this consolidated case who have already pleaded guilty, and because we conclude that the State may not seek exceptional sentences against them, the double jeopardy issue is not ripe for review.

¶45 Based on their characterization of sentencing factors as elements of separate crimes, defendants also assert that allowing a jury to consider the sentencing factors would run afoul of the joinder rule, CrR 4.3.1(b)(1). Generally, under the joinder rule, all related offenses must be tried together. *See generally State v. Dallas*, 126 Wn.2d 324, 892 P.2d 1082 (1995). Again, this issue pertains only to the two defendants who pleaded guilty, and because they will not face a sentencing jury, we need not reach it.

## III

¶46 We hold that the Laws of 2005, chapter 68, by its terms, applies only to cases where trials have not begun or guilty pleas have not been accepted, and that Washington courts lack inherent power to empanel sentencing juries outside of that new act. We hold, additionally, that the defendants have not shown the act is constitutionally infirm. Accordingly, the King County Superior Court is reversed in *State v. Base*, though the State may employ the new statutory proceedings to seek an exceptional sentence against him. The Spokane County Superior Court is affirmed in *State v. Metcalf*, though, similarly, the State may seek an exceptional sentence against Metcalf under the new statutory proceedings. The Pierce County Superior Court is affirmed in *State v.*

*Butters* and *State v. Pillatos*. We hold that the new statutory proceedings do not apply to those defendants.

¶47 We remand all four cases to the trial courts for further proceedings consistent with this opinion.

C. JOHNSON, MADSEN, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶48 SANDERS, J. (concurring) — While I agree with the outcome of these consolidated cases, I would hold an aggravating factor supporting an exceptional sentence must appear in the charging document as it is an essential element of the charged offense.

¶49 Both the United States Constitution and Washington Constitution guarantee criminal defendants the right to notification of the charges they face. *See* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall . . . be informed of the nature and cause of the accusation."); WASH. CONST. art. I, § 22 ("In criminal prosecutions the accused shall have the right . . . to demand the nature and cause of the accusation against him."). The import of this guaranty is clear. An " 'accusation which lacks any particular fact which the law makes essential to the punishment is . . . no accusation within the requirements of the common law, and it is no accusation in reason.' " *Blakely v. Washington*, 542 U.S. 296, 301-02, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) (alteration in original) (quoting 1 JOEL PRENTISS BISHOP, CRIMINAL PROCEDURE § 87, at 55 (2d ed. 1872)). The government must specifically enumerate every accusation it makes against a criminal defendant.

¶50 We have always understood our constitutions to guarantee a comprehensive charging document. *See Leonard v. Territory of Washington*, 2 Wash. Terr. 381, 392, 7 P. 872 (1885) (holding "an indictment must be direct and certain, both as regards the crime charged and as regards the particular circumstances thereof"). "Axiomatic in Washington law is the requirement that the charging document must '*allege facts supporting every element of the offense*' in

order to be constitutionally sufficient." *State v. Goodman*, 150 Wn.2d 774, 786, 83 P.3d 410 (2004) (quoting *State v. Leach*, 113 Wn.2d 679, 689, 782 P.2d 552 (1989)).

¶51 And our court rules incorporate this constitutional command. *See* CrR 2.1(a)(1) ("The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged."). Thus, "a charging document is constitutionally adequate only if all essential elements of a crime, statutory and nonstatutory, are included in the document so as to apprise the accused of the charges against him or her and to allow the defendant to prepare a defense." *State v. Vangerpen*, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

¶52 Under the "essential elements rule," a charging document must include every allegation essential to a charged offense. *Id.* "The purpose of the well-established 'essential elements' rule is to apprise the defendant of the charges against him or her and properly allow the accused to present a defense." *Goodman*, 150 Wn.2d at 784, *see also State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991) ("The primary goal of the 'essential elements' rule is to give notice to an accused of the nature of the crime that he or she must be prepared to defend against.").

¶53 The essential elements rule is "clear and easy to follow. When prosecutors seek *enhanced penalties*, notice of their intent must be set forth in the information." *State v. Theroff*, 95 Wn.2d 385, 392, 622 P.2d 1240 (1980) (emphasis added). An allegation "is an element of the offense where it aggravates the maximum sentence with which the court may sentence a defendant." *Goodman*, 150 Wn.2d at 785-86 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000)). So, if a statute permits " 'the infliction of a heavier sentence when it is shown that the accused committed the crime in question under circumstances showing aggravation . . . , it is necessary that the matter of aggravation relied upon as calling for such sentence be charged in the indictment or complaint.' " *State v. Frazier*, 81 Wn.2d 628, 633, 503 P.2d 1073 (1972) (quoting

4 RONALD A. ANDERSON, WHARTON'S CRIMINAL LAW AND PROCEDURE § 1788, at 610 (1957)). An aggravating factor supporting an exceptional sentence allows a judge to impose a sentence above the standard range; in other words, it is clearly an "essential element" of the charged crime and must appear in the charging document.

¶54  Laws of 2005, chapter 68, does not explicitly require the pleading of aggravators. Majority at 478. But an aggravating factor supporting an exceptional sentence—however defined—is an element of the charged crime and must appear in charging documents. That is, of course, the *premise* of the *Blakely* line of cases. As the Supreme Court reminded us, " 'every fact which is legally essential to the punishment' must be *charged in the indictment* and proved to a jury." *Blakely*, 542 U.S. at 302 n.5 (emphasis added) (quoting 1 BISHOP, *supra,* ch. 6, at 50-56). An aggravating factor supporting an exceptional sentence is "legally essential to the punishment" because a sentence cannot exceed the standard range unless an aggravating factor exists. " 'Where a statute annexes a higher degree of punishment to a common-law felony, if committed under particular circumstances, an indictment for the offence, in order to bring the defendant within that higher degree of punishment, must expressly charge it to have been committed under those circumstances, and must state the circumstances with certainty and precision.' " *Apprendi*, 530 U.S. at 480 (quoting JOHN FREDERICK ARCHBOLD, PLEADING AND EVIDENCE IN CRIMINAL CASES 51 (15th ed. 1862)).

¶55  Indeed, a charging document *may* omit an "aggravating factor" that "d[oes] not increase the statutory maximum sentence for the crime but rather increase[s] the sentence within the prescribed statutory range." *Goodman*, 150 Wn.2d at 786 n.6. But where an aggravating factor "aggravates the maximum sentence with which the court may sentence a defendant . . . [, it] is an element of the offense" and *must* appear in the charging document. *Id.* at 785-86.

¶56 And the aggravating factors charged here indisputably aggravate the maximum possible sentence. Daniel Base faces a standard range sentence of 0 to 90 days. The State seeks an exceptional sentence of 84 months; an aggravating factor exposes him to punishment at least 25 times more severe. James Metcalf faces a standard range sentence of 120 to 220 months.[8] The State seeks an exceptional maximum sentence of life imprisonment. Aggravating factors supporting these exceptional sentences are elements of the offenses charged and alone justify sentences vastly in excess of the standard range.

¶57 Finally, amendment of the charging document is not a particularly onerous requirement. In fact, "amendments to an information are liberally allowed before trial with continuances granted to a defendant if necessary to prepare to meet the altered charge." *Kjorsvik*, 117 Wn.2d at 103 n.18 (citing *State v. Pelkey*, 109 Wn.2d 484, 490, 745 P.2d 854 (1987)). Formal amendment of the charging document is both straightforward and necessary.

¶58 The majority determines since Base has not pleaded guilty or been to trial, "the State may proceed under the provisions of the new statute, which provide that the State give notice of the aggravating circumstances upon which it relies." Majority at 479. But I would hold proper notice requires that aggravating factors supporting an exceptional sentence appear in the charging document.

¶59 Accordingly, I concur.

¶60 CHAMBERS, J. (concurring in part) — I concur with the majority but write separately to emphasize that, although we hold we do not have authority to empanel juries to determine sentence enhancements, we do have inherent

---

[8] It appears from the record Metcalf received adequate notice of aggravating factors. "In the case of Metcalf, the information was amended three months before trial to add sexual motivation as an aggravating factor." Majority at 479. The majority holds David Pillatos and Scotty Butters may not receive exceptional sentences as each pleaded guilty prior to the effective date of the new statute. Majority at 465.

and statutory authority to create procedures necessary to carry out legislative and constitutional requirements.

¶61 We should, of course, exercise these powers sparingly, especially when the legislature has designed detailed statutory procedures we would usurp if we interfered. In *State v. Hughes*, we refused to create a procedure for juries to find aggravating factors on remand where the legislature had explicitly provided that judges find aggravating circumstances. *State v. Hughes*, 154 Wn.2d 118, 150, 110 P.3d 192 (2005), *overruled in part by Washington v. Recuenco*, 548 U.S. 212, 126 S. Ct. 2546, 165 L. Ed. 2d 466 (2006). Given that, and given that the legislature effectively limited Laws of 2005, chapter 68 to prospective application, *see* LAWS OF 2005, ch. 68, § 4, I do not believe this is a case to exercise those powers. But I believe we do have the inherent power to discharge constitutional requirements and to implement legislative intent.

¶62 The legislature itself recognized the court's inherent power to create necessary procedures as early as 1891:

> When jurisdiction is, by the Constitution of this state, or by statute, conferred on a court or judicial officer all the means to carry it into effect are also given; and in the exercise of the jurisdiction, *if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws.*

RCW 2.28.150 (emphasis added). Similarly, our criminal rules authorize juries to make special findings. CrR 6.16(b).[9] *Blakely*[10] has largely rendered the "course[s] of proceeding" "specifically pointed out by statute" unconstitutional to apply in many cases. I believe that in such a

---

[9] CrR 6.16(b) says in relevant part:

**Special Findings.** The court may submit to the jury forms for such special findings which may be required or authorized by law. The court shall give such instruction as may be necessary to enable the jury both to make these special findings or verdicts and to render a general verdict.

[10] *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

circumstance, courts can refer such questions to juries. *See, e.g., State v. Furth*, 5 Wn.2d 1, 19, 104 P.2d 925 (1940).

¶63 I absolutely agree that it is the legislature's prerogative to decide the punishments for crimes, within constitutional limits. *See State v. Le Pitre*, 54 Wash. 166, 169, 103 P. 27 (1909). But this court has long supplemented procedures laid out by the legislature to meet constitutional standards. *E.g., Furth*, 5 Wn.2d at 19. In 1909, the legislature repealed a provision of the habitual offender statute that required a jury to find the existence of prior convictions. *Furth*, 5 Wn.2d at 3-4 (quoting LAWS OF 1909, ch. 249, § 34, at 899; LAWS OF 1903, ch. 86, at 125). Before *Furth*, courts had regularly impaneled juries to decide whether the defendant had prior convictions. *See, e.g., State v. Courser*, 199 Wash. 559, 560, 92 P.2d 264 (1939); *State v. Fowler*, 187 Wash. 450, 451, 60 P.2d 83 (1936); *Le Pitre*, 54 Wash. at 167. In *Furth*, we specifically approved the practice of sending issues to the jury that the legislature had reserved for the judge. *Furth*, 5 Wn.2d at 19. Similarly, we have fairly recently *required* juries when the legislature has allowed judges to hear cases. *State v. Browet, Inc.*, 103 Wn.2d 215, 217, 220, 691 P.2d 571 (1984) (requiring juries in moral nuisance cases despite statute that provided that "the 'judge may summarily try' a defendant" (quoting former RCW 7.48.080 (1979))).

¶64 "The purpose of [the Sentencing Reform Act of 1981, chapter 9.94A RCW,] is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010. Nothing in this or the other purposes laid out by the legislature in the act are offended by asking juries to make factual findings on a few more things before the State may seek an exceptional sentence.

¶65 But this court has properly deferred to the legislature's detailed design of the sentencing process in the past. Both *State v. Ammons*, 105 Wn.2d 175, 713 P.2d 719, 718 P.2d 796 (1986) and *State v. Monday*, 85 Wn.2d 906, 540

P.2d 416 (1975) discuss the legislature's power to set the sentencing process. But simply because designing the overarching structure is the legislature's job, this court is not powerless to supplement the procedures to meet constitutional standards. *E.g., Furth*, 5 Wn.2d at 19.

¶66 This court properly declined to supplement this State's early attempts to draft a constitutional death penalty in the wake of the United State Supreme Court's cautious approval of one in *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). *See State v. Frampton*, 95 Wn.2d 469, 627 P.2d 922 (1981); *State v. Martin*, 94 Wn.2d 1, 614 P.2d 164 (1980). In *Gregg*, the United States Supreme Court invited states to attempt to craft death penalty statutes that contained proper safeguards against freakish and wanton application.

¶67 The capital case statutes of the time required the *same* jury that convicted a defendant of murder to decide whether to impose the death penalty. *Martin*, 94 Wn.2d at 8 (quoting former RCW 10.94.020(2) (1977)). Therefore, by the terms of the statutes, defendants were not eligible for the death penalty unless they pleaded not guilty and were convicted. We ultimately found that that "needlessly chill[ed] a defendant's constitutional rights to plead not guilty and demand a jury trial," and found the system unconstitutional. *Frampton*, 95 Wn.2d at 479.

¶68 In both cases, this court rejected the State's invitation to fix the statute by empanelling a sentencing jury or requiring the defendant to plead not guilty (which would have violated other principles of Washington law). *Frampton*, 95 Wn.2d at 475; *Martin*, 94 Wn.2d at 8. In both cases, we had good reasons to decline the State's invitation to change the statutory procedures. First, "death as a punishment is different. When a defendant's life is at stake, the courts have been particularly sensitive to insure that every safeguard is observed." *Frampton*, 95 Wn.2d at 478 (citing *Gregg*, 428 U.S. at 187). Second, there was no fix in *Frampton* and *Martin*. Empanelling a sentencing jury would not have satisfied the statutory requirement that the *same* jury

decide guilt and punishment. Third, the relevant holdings in *Martin* and *Frampton* did not purport, as far as I can tell, to limit this court's *power* to supplement procedures when a plain, simple, and well established way to do so offers itself.

¶69 But having a power is not the same thing as deciding to exercise it.

¶70 With those observations, I concur.

BRIDGE and J.M. JOHNSON, JJ., concur with CHAMBERS, J.