[No. 79068-0.   En Banc.]
Argued October 9, 2007.      Decided May 22, 2008.

THE STATE OF WASHINGTON, *Respondent*, v. ANTHONY D. DAVIS, *Petitioner*.

608

*David L. Donnan* (of *Washington Appellate Project*), for petitioner.

*Steven J. Tucker, Prosecuting Attorney,* and *Mark E. Lindsey, Deputy,* for respondent.

¶1 MADSEN, J. — Shortly after the United States Supreme Court issued *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), Anthony Davis was tried and convicted of multiple offenses arising from a domestic dispute involving Bobbi Dewey and her daughter, T.D.B. The State alleged the crimes against T.D.B. were aggravated by her "particular vulnerability." Under then-applicable provisions of chapter 9.94A RCW, the Sentencing Reform Act of 1981 (SRA), the trial court was required to find the existence of that statutory aggravating factor. In view of *Blakely,* however, the trial court submitted the aggravating factor to the jury by special interrogatory rather than make the factual determination itself. Based on the jury's response to the special interrogatory, the trial court imposed an exceptional sentence. The Court of Appeals affirmed. *State v. Davis,* 133 Wn. App. 415, 138 P.3d 132 (2006).

¶2 We hold the jury's response to the special interrogatory is void and cannot support Davis's exceptional sentence because the trial court exceeded its authority by delegating its fact-finding duty to the jury. Trial courts may not deviate from the legislatively prescribed exceptional sentencing procedures, whether at trial or on remand. Thus, we vacate Davis's exceptional sentence and remand for resentencing.

## FACTS

¶3 By amended information, the State charged Davis with two counts each of second degree assault and unlawful

imprisonment (against Dewey and T.D.B.), and one count each of harassment, third degree malicious mischief, and violation of a domestic violence criminal protection order. Clerk's Papers (CP) at 2-3. The State alleged the assault and unlawful imprisonment offenses against T.D.B. were aggravated by her particular vulnerability, "as provided by RCW 9.94A.535(2)(b)."[1] CP at 2-3.

¶4 The jury found Davis guilty of harassment, malicious mischief, violation of a protection order, the lesser-included offenses of fourth degree assault, and unlawful imprisonment of T.D.B.[2]

¶5 By special interrogatory, the jury found that when Davis unlawfully imprisoned T.D.B., he knew or should have known "the victim was particularly vulnerable and incapable of resistance due to extreme youth." CP at 55.

¶6 Based on the jury's response to the special interrogatory, the court imposed an exceptional sentence of 12 months on the unlawful imprisonment conviction, or 4 months above the maximum standard range sentence, for that offense. The court imposed a 365-day suspended sentence for each of the gross misdemeanor offenses, consecutive to the felony offenses, for a total term of 24 months. CP at 70.

¶7 On appeal, Davis argued the trial court impermissibly altered the sentencing procedures of the SRA by submitting the special interrogatory to the jury.[3] The Court of Appeals disagreed. The court held a trial court could submit

---

[1] Former RCW 9.94A.535 (2003) provides, "The court may impose a sentence outside the standard sentence range for an offense *if it finds,* considering the purpose of this chapter, that there are substantial and compelling reasons justifying an exceptional sentence." (Emphasis added.) Former RCW 9.94A.535(2)(b) (2003) provides, "The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health." The legislature further provided the existence of facts supporting an exceptional sentence need not be proved beyond a reasonable doubt, but only by a preponderance of the evidence. Former 9.94A.530(2) (2002).

[2] The jury found Davis not guilty of unlawful imprisonment of Dewey.

[3] Davis also argued that prosecutorial misconduct requires reversal of his convictions and that insufficient evidence supports the unlawful imprisonment

aggravating factors to a jury during the guilt phase of a trial even though, following *State v. Hughes*, 154 Wn.2d 118, 110 P.3d 192 (2005), it lacked authority to impanel a special sentencing jury for that purpose on remand. *Davis*, 133 Wn. App. 415.

¶8 This court granted Davis's petition for discretionary review on the exceptional sentence issue. *State v. Davis*, 159 Wn.2d 1019, 157 P.3d 404 (2007).

## ANALYSIS

¶9 On June 24, 2004, the United States Supreme Court issued its decision in *Blakely*. *Blakely* rendered the mechanism for imposing an exceptional sentence under the SRA unconstitutional in certain applications. The legislature responded to *Blakely* by enacting Laws of 2005, chapter 68 (2005 amendment), which became effective on April 15, 2005. The 2005 amendment provides a valid procedure whereby juries may be charged with making findings in support of an exceptional sentence. *State v. Pillatos*, 159 Wn.2d 459, 473, 150 P.3d 1130 (2007). However, the 2005 amendment expressly provides the statute applies only to cases where trial has not yet begun, or a guilty plea accepted, on its effective date. *Id.* at 474. Davis was tried in January 2005, several months before the effective date of the 2005 amendment, so the statute does not apply to him.

¶10 In both *Pillatos* and *Hughes*, we rejected the argument that a trial court could deviate from legislatively prescribed exceptional sentencing procedures during the period between *Blakely* and the effective date of the 2005 amendment. Before the legislature enacted the 2005 amendment, this court held that trial courts could not impanel sentencing juries, on remand, to find the facts necessary to support an exceptional sentence, because the SRA "explicitly directs the trial court to make the necessary factual findings and *does not include any provision allowing a jury to make*

conviction. The Court of Appeals rejected those arguments, and they are not at issue here.

*those determinations during trial, during a separate sentencing phase, or on remand." Hughes,* 154 Wn.2d at 149 (emphasis added). Following the enactment of the 2005 amendment, we concluded, consistently with *Hughes,* that trial courts lack authority during trial to submit special interrogatories to juries in deviation from the SRA's exceptional sentencing procedures. *Pillatos,* 159 Wn.2d at 474.

¶11 The State attempts to distinguish *Pillatos* on the ground it addresses only the court's authority to impanel a *sentencing* jury, not a court's authority to submit a special interrogatory to a *guilt-phase* jury.

¶12 *Pillatos* cannot be read so narrowly. Indeed, we accepted review in *Pillatos* to address whether juries could be asked to find statutory aggravating factors during trial or at sentencing. Following the enactment of the 2005 amendment, this court expanded review to include the validity and applicability of that legislation.

¶13 *Pillatos* involved the consolidated appeals of four defendants. Two of the defendants were not yet sentenced while two were not yet convicted, including James Metcalf. The State charged Metcalf with second degree murder. Following *Blakely,* the State amended the information to add the statutory aggravating factors of "deliberate cruelty" and the victim's "particular vulnerability." *Id.* at 467. The trial court denied the motion, concluding it lacked the authority to submit those factors to the jury. This court affirmed the trial court's decision. *Id.* at 480. Thus, in *Pillatos,* we rejected the use of special interrogatories during the guilt phase of the trial, in deviation from applicable exceptional sentencing procedures.

¶14 The Court of Appeals, which did not have the benefit of *Pillatos* when it decided this case, agreed with the State that *"Hughes* is inapplicable" because it dealt only with a trial court's authority " 'on remand,' " while expressly reserving the question " 'whether juries may be given special verdict forms or interrogatories to determine aggravating factors at trial.' " *Davis,* 133 Wn. App. at 427 (quoting

*Hughes,* 154 Wn.2d at 149). The Court of Appeals reasoned that RCW 2.28.150 and CrR 6.16(b) supplied the necessary authority. *Davis,* 133 Wn. App. at 427.

¶15 RCW 2.28.150 provides that "if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws." The Court of Appeals appears to have reasoned that an unconstitutional statute is not a "statute" within the meaning of RCW 2.28.150. *Davis,* 133 Wn. App. at 427. Thus, following *Blakely,* there was no longer a procedure " 'specifically pointed out by statute' " for finding facts in support of an exceptional sentence. *Id.* (quoting RCW 2.28.150).

¶16 CrR 6.16(b) authorizes a trial court to submit special interrogatories to juries to make special findings "which may be required or authorized by law." The Court of Appeals agreed with the State that the use of special interrogatories to find aggravating factors was "required" by law, following *Blakely. Davis,* 133 Wn. App. at 428.

¶17 Division One of the Court of Appeals applied the same reasoning in *State v. Harris,* 123 Wn. App. 906, 922-26, 99 P.3d 902 (2004), *overruled by Hughes,* 154 Wn.2d 118, in the context of deciding whether trial courts could impanel special sentencing juries to find statutory aggravating factors. *Harris* was one of the first published cases following *Blakely* to provide guidance to lower courts pending a legislative solution. In *Harris,* the court sanctioned the use of special sentencing juries to conform exceptional sentencing procedures to constitutional requirements. In the court's view, the unconstitutional provisions in the SRA, requiring judicial fact-finding of aggravating factors according to a preponderance of the evidence standard of proof, were severable from the rest of the exceptional sentencing scheme. Once severed, trial courts had authority under RCW 2.28.150 and CrR 6.16(b) to supply procedures necessary to correct the constitutional deficiencies identified in *Blakely. Harris,* 123 Wn. App. at 923-25.

¶18 This court overruled *Harris* in *Hughes,* stating:

> [W]e disagree with that conclusion as well as the court's reasoning supporting it—that because there is nothing in the statute to prohibit the procedure and because trial courts have some inherent authority to imply procedures where they are absent, that we could do so here in the face of legislative intent to the contrary. We reach the opposite conclusion.

*Hughes,* 154 Wn.2d at 152 n.16.

¶19 The State cites to numerous cases where this court has validated a trial court's authority to imply a procedural mechanism for enforcing a defendant's jury trial right. However, these cases all involve situations where the statute was silent or ambiguous with respect to the relevant procedure. *State v. Becker,* 132 Wn.2d 54, 61, 935 P.2d 1321 (1997) (use of special verdict to determine school drug zone sentence enhancement; statute silent regarding procedure); *State v. Rivers,* 129 Wn.2d 697, 703, 921 P.2d 495 (1996) (use of special sentencing jury to determine persistent offender status under the "three strikes" law; statute silent regarding procedure); *Abad v. Cozza,* 128 Wn.2d 575, 588, 911 P.2d 376 (1996) (district court had authority to adopt local rule to implement deferred prosecution statute; statute silent regarding procedure); *State v. Frederick,* 100 Wn.2d 550, 553, 674 P.2d 136 (1983) (use of special jury to adjudicate habitual offender status; statute silent regarding procedure), *overruled in part on other grounds by Thompson v. Dep't of Licensing,* 138 Wn.2d 783, 982 P.2d 601 (1999); *State v. Courser,* 199 Wash. 559, 560, 92 P.2d 264 (1939) (use of jury to adjudicate habitual offender status; statute silent regarding procedure); *State v. Fowler,* 187 Wash. 450, 451, 60 P.2d 83 (1936) (use of jury to adjudicate habitual offender status; statute silent regarding procedure); *Rogoski v. Hammond,* 9 Wn. App. 500, 503-04, 513 P.2d 285 (1973) (trial court had authority to hold a prejudgment attachment hearing; statute silent regarding procedure).

¶20 In contrast, in 1981 our legislature made a deliberate decision to adopt a determinate sentencing scheme, the

SRA, which intentionally narrowed judicial discretion. Central to the SRA is a detailed sentencing matrix, which yields a standard range sentence. The sentencing court is bound to impose a standard range sentence unless the statutory requirements for an aggravated or mitigated sentence are established. In *Blakely,* the United States Supreme Court held that aggravating factors which increase the sentence above the standard range are in the nature of additional elements that must be proved beyond a reasonable doubt. *Blakely,* 542 U.S. at 301-02. After *Blakely,* our legislature was required to make a policy decision about the role of judges in sentencing. It could have rendered exceptional sentences discretionary, as in the analogous federal sentencing scheme. Alternatively, the legislature could have elected to limit judicial discretion, necessitating jury trials on aggravating elements with proof beyond a reasonable doubt. *See United States v. Booker,* 543 U.S. 220, 250, 258, 265, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005) (setting forth these alternatives and inferring Congress would have given judges discretion in sentencing rather than allocate fact-finding to juries had it known mandatory federal sentencing guidelines were unconstitutional). In light of the policy judgments reflected in the SRA, and its detailed nature, this court has deferred to the legislature to decide on a procedure following *Blakely.*

¶21 As we explained in *Hughes,* when the legislature provides a detailed procedure, later deemed invalid, courts should refrain from creating a procedure from " 'whole cloth' " in order to " 'rescu[e] a statute from a charge of unconstitutionality.' " *Hughes,* 154 Wn.2d at 151 (quoting *State v. Martin,* 94 Wn.2d 1, 18, 614 P.2d 164 (1980) (Horowitz, J., concurring)); *see also Booker,* 543 U.S. at 250 (declining to engraft a constitutional jury trial requirement onto the federal sentencing guidelines as plainly contrary to legislative intent). Thus, in *Hughes,* this court declined to imply a procedure for allowing juries to find statutory aggravating factors on remand. *Hughes,* 154 Wn.2d at 150 (" 'it would be a clear judicial usurpation of legislative power

for us to correct [a] legislative oversight' " (quoting *Martin,* 94 Wn.2d at 8 (refusing to imply a procedure for impaneling a sentencing jury in capital cases where defendant pleads guilty))); *see also State v. Frampton,* 95 Wn.2d 469, 627 P.2d 922 (1981) (refusing to infer such a sentencing procedure from a general statute where the legislature failed to provide a procedure in a more specific statute relating to death penalty).

¶22 Although we limited our holding to the facts of that particular case, our reasoning in *Hughes* applies with equal force to proceedings at trial. *See In re Pers. Restraint of Hall,* 163 Wn.2d 346, 181 P.3d 799 (2008); *State v. Womac,* 160 Wn.2d 643, 160 P.3d 40 (2007); *Pillatos,* 159 Wn.2d 459.[4]

¶23 At the time Davis was tried, the SRA required the judge, not the jury, to find the existence of the statutory aggravating factor at issue, according to the preponderance of the evidence standard of proof. Former RCW 9.94A.530(2) (2002); former RCW 9.94A.535(2) (2003); *Hall,* 163 Wn.2d at 353, 355. The trial court could neither delegate its fact-finding duty to the jury nor impose a more demanding standard of proof. *Id.* at 355. Even though Davis's jury expressly found, beyond a reasonable doubt, the victim was "particularly vulnerable," that finding cannot support the imposition of an exceptional sentence under then-existing

---

[4] The dissent's analysis amounts to a reiteration of the Court of Appeals' reasoning in *Harris,* 123 Wn. App. 906, which we rejected first in *Hughes,* and again in *Pillatos, Womac,* and *Hall.* Although the dissent considers these cases "wrongly decided," it offers no previously unconsidered rationale or legal authority to justify overruling them. Dissent at 620. The dissent attempts to distinguish *Pillatos* on the ground this case involves "an already impaneled jury, the commonly used procedural mechanism of a special interrogatory, and a valid jury finding (rendered beyond a reasonable doubt)." *Id.* Yet James Metcalf's case, which we decided in *Pillatos,* presented a nearly identical factual scenario, the only difference being that Metcalf's trial judge denied the State's request for a special interrogatory, while Davis's trial judge granted it. Following *Pillatos,* Davis's trial court lacked authority to delegate its fact-finding duty to the jury by way of a special interrogatory. The fact that Davis's jury was allowed to enter a finding while Metcalf's was not makes no difference.

law.[5] *See id.* (concluding, "it was procedurally impossible" for a jury to make the requisite factual findings in support of an exceptional sentence); *Womac,* 160 Wn.2d at 663 (same).

¶24 The State argues, however, that even if the trial court erred in submitting the special interrogatory to the jury, the error is harmless in view of the legislature's enactment of Engrossed House Bill 2070, effective April 27, 2007 (2007 amendment). LAWS OF 2007, ch. 205. That statute allows superior courts, in cases where an exceptional sentence was imposed and where a new sentencing hearing is required, to impanel a jury to consider any alleged aggravating circumstances listed in RCW 9.94A.535(3) that were relied upon by the superior court in imposing the previous sentence. Anticipating the State's argument, Davis challenges the constitutionality of the 2007 amendment.

¶25 The applicability and constitutionality of the 2007 amendment is not properly before this court. *See Pillatos,* 159 Wn.2d at 478 (declining to decide whether the State must charge aggravating factors in the information as unripe for review). The statute has not been applied to Davis. Considering Davis has already served the exceptional sentence, it appears doubtful the State will invoke the new sentencing procedures on remand. If it does, Davis may challenge the legislation at that time. The trial court should have the first opportunity to pass on its applicability and constitutionality.

## CONCLUSION

¶26 Consistent with *Hughes, Pillatos, Womac,* and *Hall,* we hold trial courts lacked authority to submit special

---

[5] The dissent characterizes our holding as a refusal to allow an exceptional sentence "because one procedure is problematic." Dissent at 619. The dissent fails to recognize the "one procedure" at issue is the *only* statutorily authorized procedure for imposing an exceptional sentence based on the victim's particular vulnerability.

interrogatories to juries at trial in deviation from legislatively prescribed exceptional sentencing procedures, during the period between the Supreme Court's issuance of *Blakely* and the effective date of the 2005 amendment. We further hold the jury's response to the special interrogatory is void. We vacate Davis's exceptional sentence and remand for resentencing, while expressing no opinion on the applicability or constitutionality of the Laws of 2007, chapter 205.

ALEXANDER, C.J.; and C. JOHNSON, SANDERS, OWENS, and FAIRHURST, JJ.; and BRIDGE, J. PRO TEM., concur.

¶27 J.M. JOHNSON, J. (dissenting) — *Blakely*[6] requires a jury to find any aggravating factor increasing a sentence beyond the maximum for the underlying crime. Here, the jury through special interrogatory found that T.D.B.'s "particular vulnerability" aggravated Anthony Davis' unlawful imprisonment of this child victim. In my view, the analysis should end here. But Davis claims, and the majority holds, that the trial judge erred by providing the added protection of a jury decision on the aggravating factor beyond a reasonable doubt (rather than a judge making such findings by a preponderance of the evidence). Because the trial judge fully protected Davis' right to jury trial, I dissent.

¶28 The majority did not recite the facts supporting Davis' conviction, so I will briefly review them. Davis lived with his girl friend, Bobbi Dewey, and her seven year old daughter, T.D.B. One evening, Ms. Dewey told Davis that their relationship was ending and that he had to move out. Shortly after, Davis called Ms. Dewey into the bedroom. He grabbed her neck and threw her into a nightstand. He then grabbed her by the throat and banged her head into the wall. He grabbed her neck again and shoved her into the frame of their iron rod bed and banged her head against the bars.

¶29 T.D.B. heard her mom screaming and came into the bedroom. Ms. Dewey told the child to run for help. Davis

---

[6] *Blakely v. Washington,* 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

ordered T.D.B. not to leave. T.D.B. pleaded with Davis not to hurt her mom and grabbed Davis' arm. He grabbed the child's shirt and pulled her down, slamming her arm into the wall. Davis threatened to kill them both and ordered them into the living room. After threatening again to hurt Ms. Dewey, and breaking a picture frame and a light, Davis left the house. Ms. Dewey called 911.

¶30 The State charged Davis with two counts of second degree assault and unlawful imprisonment and one count of harassment, third degree malicious mischief, and violation of a domestic protection order. The State alleged that the unlawful imprisonment against T.D.B. was aggravated by her particular vulnerability—incapability of resistance due to extreme youth.

¶31 In between *Blakely* (June 24, 2004) and the *"Blakely* fix" (April 15, 2005) (Laws of 2005, ch. 68), a trial judge had three options regarding exceptional sentences: (1) apply a procedure found unconstitutional by determining any aggravating factor himself; (2) impose no exceptional sentence on any defendant; or (3) submit the issue by special interrogatory to an already impaneled jury, relying on the authority of a statute and court rule.

¶32 The majority declares that "[t]rial courts may not deviate from the legislatively prescribed exceptional sentencing procedures, whether at trial or on remand," even when the Supreme Court of the United States has explicitly declared one procedure unconstitutional. Majority at 608. I disagree. It makes no sense to require a trial judge to apply a procedure previously held invalid. If the judge had done so here, the exceptional sentence would have been reversed as a violation of the *Blakely* right to a jury trial.

¶33 The majority also asserts that in between *Blakely* and the *Blakely* fix, a period of over nine months, neither a judge nor a jury could impose an exceptional sentence. This clearly frustrates legislative intent and renders much of the exceptional sentence statute meaningless. RCW 9.94A.010(1) declares that the purpose of the chapter is to "[e]nsure that the punishment for a criminal offense is proportionate to the

seriousness of the offense." And in RCW 9.94A.535, the legislature provided that certain aggravating factors could increase the seriousness of the offense and consequent penalties. The statute focuses on victims and declares that "particularly vulnerable" victims deserve greater protection. Yet the majority's narrow, formulistic view of the law denies this protection. The majority disregards the legislative directive and refuses to apply the substance of a statute because one procedure is problematic.

¶34 I would hold that the court properly submitted the aggravating factors to the jury to comply with *Blakely*. Both a statute and court rule allowed judges to provide this remedy prior to the legislature's *Blakely* fix. RCW 2.28.150 provides that "if the course of proceeding is not specifically pointed out by statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of the laws." CrR 6.16(b) declares, "[t]he court may submit to the jury forms for such special findings which may be required or authorized by law. The court shall give such instruction as may be necessary to enable the jury both to make these special findings or verdicts and to render a general verdict."

¶35 Under *Blakely,* the judge determined the procedure provided in the statute for imposing enhanced sentences was unconstitutional *because* of a defendant's right to a jury. Title 9 RCW contains the following broad severability clause:

> If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

RCW 9.94A.910. The trial court properly applied this provision and severed and struck the invalid procedure from the substantive remainder of the statute. This renders the statute silent on the procedure to determine aggravating factors. The trial court then had authority under RCW

2.28.150 and CrR 6.16(b) to submit the aggravating factor to the jury by special interrogatory. The trial judge properly "discharge[d] constitutional requirements and . . . implement[ed] legislative intent." *State v. Pillatos,* 159 Wn.2d 459, 485, 150 P.3d 1130 (2007) (Chambers, J., concurring). His actions should be commended rather than overturned. The judge protected Davis' jury trial right and implemented the statute.

¶36 On many other occasions, this court has recognized a trial court's authority to adopt a procedural mechanism to protect a defendant's right to a trial by jury. See majority at 613 for a list of examples. In my view, this case is no different. Inasmuch as *Hughes,*[7] *Pillatos, Womac,*[8] and *Hall*[9] hold to the contrary, I believe those cases were wrongly decided. These cases also criticized creating a " 'procedure out of whole cloth' " to impanel a sentencing jury on remand to determine aggravating factors. *Pillatos,* 159 Wn.2d at 469 (quoting *Hughes,* 154 Wn.2d at 152). This case is distinguishable. Here, we had an already impaneled jury, the commonly used procedural mechanism of a special interrogatory, and a valid jury finding (rendered beyond a reasonable doubt). No "whole cloth" procedure was created. It makes no sense to void the jury finding that Davis deserved an exceptional sentence because one of his victims was a child the jury found particularly vulnerable.

¶37 *Blakely*'s avowed rationale was to protect a defendant's constitutional right to trial by jury. Here, the trial judge properly implemented legislative intent for enhanced penalties while protecting Davis' jury trial right. The plain language of RCW 2.28.150 and CrR 6.16(b) provides a trial judge ample authority to employ an alternative jury procedure in exceptional sentencing cases such as this one. Because the majority holds otherwise, I dissent.

CHAMBERS, J., concurs with J.M. JOHNSON, J.

---

[7] *State v. Hughes,* 154 Wn.2d 118, 110 P.3d 192 (2005).

[8] *State v. Womac,* 160 Wn.2d 643, 160 P.3d 40 (2007).

[9] *In re Pers. Restraint of Hall,* 163 Wn.2d 346, 181 P.3d 799 (2008).