IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| In Re the Personal Restraint of: | No.  55696-1-II |
| PATRICK LEE SARGENT, | PUBLISHED  OPINION |
| Petitioner. | |

WORSWICK, J. — Patrick Lee Sargent seeks relief from personal restraint imposed when the trial court denied him bail following his charges for attempted first degree murder and felony harassment.  He argues that the trial court violated article I, section 20 of the Washington Constitution, which allows a trial court to deny bail "for offenses punishable by the possibility of life in prison."  Sargent argues that first degree murder is not "punishable by the possibility of life in prison."  He further argues that there was not clear and convincing evidence that he had a propensity for violence.  We disagree and hold that first degree attempted murder is "punishable by the possibility of life in prison."  We further hold that clear and convincing evidence supported the trial court's order.  Accordingly, we deny Sargent's petition.

FACTS

On April 6, 2021, the State charged Patrick Sargent with one count of attempted first degree murder and one count of felony harassment.  The State alleged that Sargent attacked Olusegun Edema, Sargent's half-sister's partner, with two hammers, a knife, and a teacup.  The State alleged that Sargent lived in the same house with Edema and his half-sister, Lauren Powell.  After the incident, but before filing charges, the trial court issued domestic violence no-contact orders prohibiting Sargent from contacting Powell or Edema.  The trial court also ordered

Sargent to surrender all weapons. Sargent filed a declaration of non-surrender and stated he did not have any firearms or other dangerous weapons.

On April 7, the State filed a memorandum in support of detention pending trial. In it, the State argued that Sargent demonstrated a propensity for violence that created a substantial likelihood of danger to the community or any persons and asked that the trial court hold Sargent without bail. The State alleged that Powell told police that Sargent had attacked Edema with a hammer. Edema fought off Sargent and knocked the hammer away, but Sargent produced a second hammer and continued the attack. Edema then knocked the second hammer away, at which point Sargent attacked him with a knife before being overpowered yet again. Sargent then smashed a teacup over Edema's head.

The State further alleged that after the attack, police officers recovered a paper tablet that Sargent had been writing in. On the tablet, in an apparent letter to his brother Jonathan Sargent, Sargent wrote, "I must rid my sister of the darkness that has infested her life. The demon will take everything from her if I let him. . . . I must raise a righteous hand, strike down my enemy and prove that I am no coward." Pet. Attachment F at 6, 14. Powell told police officers that Sargent had been violent his whole life and had tried to kill her in 2008. Finally, the State alleged that Sargent had previously been kicked out of Jonathan's home and that Jonathan declined to speak to the police because he feared for the safety of his wife and children should Sargent be released from custody.[1] Thus, the State argued that Sargent was a danger to the victims and a flight risk, and requested the trial court deny bail.

---

[1] We use first names for the Sargent family members for clarity. No disrespect is intended.

No. 55696-1-II

The trial court held a hearing on April 9. There, the trial court granted the State's motion and ordered Sargent to be held without bail pending trial.

On April 20, Sargent petitioned a writ of habeas corpus to challenge his restraint without bail. Sargent argued that we hear his petition as a petition for a writ of habeas corpus, rather than a personal restraint petition (PRP). A commissioner of this court ruled that the Rules of Appellate Procedure superseded the appellate procedure formerly available for a writ of habeas corpus. Personal Restraint Petition of Patrick Lee Sargent, Ruling by Commissioner Schmidt, No. 55696-1-II (May 24, 2021); RAP 16.3(b). Sargent's petition is now before us as a PRP.[2] *See* RAP 16.11.

ANALYSIS

Article I, section 20 of the Washington Constitution provides:

> All persons charged with crime shall be bailable by sufficient sureties, except for capital offenses when the proof is evident, or the presumption great. Bail may be denied for offenses *punishable by the possibility of life in prison* upon a showing by clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons, subject to *such limitations as shall be determined by the legislature*.

Wash. Const. art. I, § 20 (emphasis added).

---

[2] Our Supreme Court has explained:

> The personal restraint petition is the procedure by which original actions are brought in the appellate courts of Washington to obtain collateral or postconviction relief from criminal judgments and sentences, and other forms of government restraint, such as civil commitment and prison discipline. Governed by the procedures set forth in Title 16 RAP, a personal restraint petition is the vehicle for seeking relief that was formerly available by petition for writ of habeas corpus or other postconviction motion. RAP 16.3. This court and the Court of Appeals have concurrent original jurisdiction over such petitions. RAP 16.3(c).

*Colvin v. Inslee*, 195 Wn.2d 879, 899, 467 P.3d 953 (2020).

3

Sargent argues that his restraint is unlawful because attempted first degree murder is not punishable by the possibility of life in prison. He further argues that the trial court erred when it denied him bail because it did not find by clear and convincing evidence that he presented a danger to the community or any persons. The State argues that the trial court acted within its lawful authority and properly denied Sargent bail. We agree with the State.

## I. CONSTITUTIONAL ANALYSIS

Sargent argues that the trial court denied him bail in violation of article I, section 20. Sargent's novel argument requires us to analyze two phrases from article I, section 20 to determine (1) whether attempted murder is "punishable by the possibility of life in prison" and (2) whether the Sentencing Reform Act (SRA), chapter 9.94A RCW, is a "limitation" on article I, section 20 as "determined by the legislature." We answer the first question in the affirmative and the second in the negative.

A.      *Legal Principals*

1. *Standard of Review*

The meaning of the phrases "punishable by the possibility of life in prison" and "subject to such limitations as shall be determined by the legislature" present us with questions of first impression. We review constitutional challenges de novo. *State v. Clarke*, 156 Wn.2d 880, 887, 134 P.3d 188 (2006). We seek to determine and give effect to the manifest purpose for which a constitutional provision was adopted. *State v. Barton*, 181 Wn.2d 148, 155, 331 P.3d 50 (2014). We look to the plain language of the constitutional text to accord it its reasonable interpretation, giving words their common and ordinary meaning as they existed at the time they were drafted. *Barton*, 181 Wn.2d at 155. We also review the provision's historical context for guidance in

interpreting its meaning. *Barton*, 181 Wn.2d at 155. We interpret both statutes and the constitution so that no portion is rendered superfluous. *Farris v. Munro*, 99 Wn.2d 326, 333, 662 P.2d 821 (1983).

### 2. *History of Constitutional Amendment*

In *State v Barton*, our Supreme Court explained the history of article I, section 20:

> This provision became the focus of attention in 2009, when Maurice Clemmons shot and killed four police officers in Lakewood. Clemmons committed his murders while out on bail for felony charges that could have resulted in life imprisonment. In response to this tragedy, the legislature proposed a constitutional amendment to article I, section 20 that would make bail more difficult to obtain for a person awaiting trial for a crime that would be punishable by life in prison. . . . Voters approved the constitutional amendment on November 2, 2010. Wash. Const. art. I, sec. 20.

181 Wn.2d at 152-53.

The first sentence of article I, section 20 was in Washington's original constitution. *Westerman v. Cary*, 125 Wn.2d 277, 289, 892 P.2d 1067 (1994). It was based on similar provisions from the Oregon and Indiana constitutions. *Westerman*, 125 Wn.2d at 289. The current version of the provision with the 2010 amendment is similar to the constitutions of multiple states in that it expands the possibility of bail denial beyond charges only for capital crimes. CAL. CONST. art I, § 12 (including "[f]elony offenses involving acts of violence on another person"); PA. CONST. art. I, § 14 ("for offenses for which the maximum sentence is life imprisonment"); VT. CONST. ch. II, § 40 (including "[a] person accused of a felony, an element of which involves an act of violence against another person"); OHIO CONST. art. I, § 9 ("a person who is charged with a felony"); FLA. CONST. art. I, § 14 ("an offense punishable by life imprisonment"). More than 15 states include provisions with a right to bail with exceptions beyond charges for capital crimes. *See* 4 CRIM. PROC. § 12.3(b) (4th ed., 2020) (listing and

analyzing bail provisions of each state constitution). However, the wording of Washington's constitution appears to be unique in its exception for crimes "punishable by the possibility of life in prison."

B.      *"Offenses Punishable by the Possibility of Life in Prison"*

1.  *Plain Language*

Sargent argues that his restraint is unlawful because article I, section 20 prohibits the trial court from denying bail for any charges except those for aggravated first degree murder and for persistent offenders. He argues that under the plain language of the constitution these are the only offenses punishable by "the possibility" of life in prison. Br. of Petitioner at 8; Reply Br. of Petitioner at 1-3.[3] Sargent bases his argument on an interpretation of the SRA. He argues that given the seriousness level of his charges under the SRA,[4] when analyzing the potential sentence he could receive for his charges under the sentencing grid,[5] applying any potential aggravating circumstances,[6] and multiplying the range by 75 percent as required for anticipatory offenses,[7]

---

[3] In his reply brief, Sargent expands this to argue the constitution also allows bail for certain class A sex offenses under RCW 9.94A.507, and class A felonies committed before the effective date of the Sentencing Reform Act (1984).

[4] RCW 9.94A.515 creates different classes of crimes in order to rank their severity under the SRA. First degree murder is second only to aggravated murder in severity.

[5] RCW 9.94A.510.

[6] RCW 9.94A.537(1) provides:

> At any time prior to trial or entry of the guilty plea if substantial rights of the defendant are not prejudiced, the state may give notice that it is seeking a sentence above the standard sentencing range. The notice shall state aggravating circumstances upon which the requested sentence will be based.

[7] RCW 9.94A.595.

it is not "possible" that he will be sentenced to life in prison. Br. of Petitioner at 8-10. Put another way, 75 percent of "life" cannot be "life." Thus, he argues, a sentence of life in prison is not a "possibility" because any sentence he could receive would be determinate. Br. of Petitioner at 9.

The State argues that a plain language reading of article I, section 20 shows that it applies to all class A felonies because "possibility of life in prison" is a term of art referencing the statutory maximum sentence. Br. of Resp't at 4, 6. We agree with the State.

Because the provision of article I, section 20 at issue here was drafted and approved in 2010, the language used at the time of drafting is substantively the same as it is today. *See Barton*, 181 Wn.2d at 152-53. Accordingly, we need not look to historical definitions of words in the relevant part of article I, section 20 to determine their meaning at the time they were drafted. *See Barton*, 181 Wn.2d at 155-56 (examining the 1891 definition of "surety" in the first sentence of article I, section 20). We apply the contemporary ordinary meaning of words in the relevant provision and examine them in the context of the statutory maximums and the SRA.

RCW 9A.20.021(1) provides the maximum sentences for crimes and reads, in pertinent part:

> Unless a different maximum sentence for a classified felony is specifically established by a statute of this state, no person convicted of a classified felony shall be punished by confinement or fine exceeding the following:
> (a) For a class A felony, by confinement in a state correctional institution for a term of life imprisonment, or by a fine in an amount fixed by the court of fifty thousand dollars, or by both such confinement and fine.

Our courts have consistently held that the "statutory maximum" means the maximum sentence under RCW 9A.20.021 and not the high end of the standard range under the SRA. *State v. Toney*, 149 Wn. App. 787, 795-96, 205 P.3d 944 (2009). In *State v. Toney*, the defendant was

convicted of two class A felonies: first degree assault and first degree burglary. 149 Wn. App. at

789, 796. Toney argued that his sentence, when combined with his community placement,

exceeded the "statutory maximum" for his crimes under the SRA. 149 Wn. App. at 793-94.

We affirmed Toney's convictions and explained:

> Washington courts have consistently determined the 'statutory maximum' of a
> crime by looking to RCW 9A.20.021, *not the high end of the standard range under
> the SRA. See, e.g.*, *State v. Bobenhouse*, 143 Wn. App. 315, 331, 177 P.3d 209
> (2008), (statutory maximum for first degree child rape is life) (citing RCW
> 9A.20.021); [*aff'd*, 166 Wn.2d 881, 214 P.3d 907 (2009)] . . . *State v. Thompson*,
> 143 Wn. App. 861, 871, 181 P.3d 858 (2008) (maximum sentence for murder is life
> imprisonment) (citing RCW 9A.20. 021); *State v. Adams*, 138 Wn. App. 36, 51,
> 155 P.3d 989 (2007) (statutory maximum for class A felony is life imprisonment)
> (citing RCW 9A.20.021); [*State v.*] *Knotek*, 136 Wn. App. [412], 425, 149 P.3d 676
> [(2006)] (finding that *Blakely* 'does not nullify life imprisonment as the statutory
> maximum for a Class A offense,' but '. . . reduce[s] the maximum terms of
> confinement to which the court could sentence' without a jury fact finding). We
> conclude that RCW 9A.20.021 provides the statutory maximum.
>
> . . . First degree assault and first degree burglary are class A felonies with a
> statutory maximum of life in prison. RCW 9A.36.011(2); RCW 9A.52.020(2);
> RCW 9A.20.021(1)(a). Toney's sentences of 75 months and 216 months plus the
> community placement of 2 years do not exceed the maximum statutory sentence of
> life imprisonment for the assault and burglary charges.

*Toney*, 149 Wn. App. at 795–96 (emphasis added).

We clarified that although under *Blakely v. Washington*, 542 U.S. 296, 303-04, 124 S. Ct.

2531, 159 L. Ed. 2d 403 (2004), a jury must find the facts necessary to impose a sentence beyond

a standard range, that impacts only "the procedure by which the maximum sentence may be

imposed, not the definition of a crime's 'statutory maximum.'" *Toney*, 149 Wn. App. at 795.

Likewise, in both *Bobenhouse*, 166 Wn.2d at 895, and *Clarke*, 156 Wn.2d at 891, our Supreme

Court explained that "the relevant statutory maximum for *Apprendi* purposes is life imprisonment."[8]

The State relies on *State v. Buckman*, 190 Wn.2d 51, 54-55, 409 P.3d 193 (2018), to support its argument. There, our Supreme Court held that a juvenile guilty plea for second degree rape of a child was involuntary because Buckman was misinformed that he might be sentenced to life in prison.[9] 190 Wn.2d at 59. The *Buckman* court explained that the portion of the SRA Buckman was informed he would be sentenced under did not apply because it explicitly excluded those aged 17 and under. 190 Wn.2d at 55; RCW 9.94A.507(2). Although *Buckman* is distinguishable because it concerned whether an indeterminate sentence imposed under the SRA could apply to a person under 18 and did not address the constitution's bail provision, the court still addressed the sentencing range and maximum for Buckman's crime. 190 Wn.2d at 54. The *Buckman* court reinforced what the *Bobenhouse*, *Clarke*, *Toney*, and other courts have maintained: that the class A felony with which Buckman was charged was punishable with a "maximum term of life." 190 Wn.2d at 55, 59-60. The reasoning from those cases resonates here.[10]

---

[8] *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000), held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."

[9] "Rape of a child in the second degree is a class A felony." RCW 9A.44.076(2).

[10] In his reply brief, Sargent argues that the portion of the SRA governing the sentencing of sex offenders, RCW 9.94A.507, provides for the possibility of a life sentence, and therefore all sex offenders could be subject to bail denial. But the RCW 9.94A.507 does not explicitly provide for the possibility of a life sentence. Instead, it states, "The maximum term shall consist of the *statutory maximum* sentence for the offense." RCW 9.94A.507(3)(b) (emphasis added). That statutory maximum is not defined by the SRA, but by RCW 9A.20.021.

The SRA provides the procedure by which a defendant's sentence may be imposed. "The purpose of [the SRA] is to make the criminal justice system accountable to the public by developing a system for the sentencing of felony offenders which structures, but does not eliminate, discretionary decisions affecting sentences." RCW 9.94A.010. The SRA therefore provides some limitations on a sentencing court's determinations, but does not remove the court's discretion. Thus, the SRA is generally procedural in nature. *See State v. Davis*, 163 Wn.2d 606, 610-11, 184 P.3d 639 (2008) (explaining the SRA provides sentencing procedures); *State v. Applegate*, 147 Wn. App. 166, 173, 194 P.3d 1000 (2008) (holding the "*Blakely* fix" to be a procedural change in the SRA); *State v. McNeal*, 156 Wn. App. 340, 355, 231 P.3d 1266 (2010) (stating that the SRA contains the procedure for a sentencing court to consider certain exceptional sentencing factors). Accordingly, the SRA does not define the statutory maximum punishment a court may impose.

The text of the SRA supports this reasoning. In placing limitations on standard range sentences, the SRA provides: "The maximum term of confinement in a range may not exceed the statutory maximum for the crime as provided in RCW 9A.20.021." RCW 9.94A.506(3). It does not make sense that the SRA would both define maximum punishment but then also refer to the statute that defines the statutory maximum for a crime—and a different maximum punishment at that. Following Sargent's logic, then, interpreting article I, section 20 of the constitution to be limited by the procedural provisions of the SRA would make the language in RCW 9A.20.021 superfluous. There would be no need for the maximum "possible" punishment to be defined by RCW 9A.20.021 because it would be determined by the SRA. This would obviate RCW 9A.20.021. Instead, we hold that the maximum punishment "possible" under article I, section 20

10

is the statutory maximum as defined in RCW 9A.20.021. The SRA provides the sentencing guidelines, the "statutory maximum" determines whether there is "the possibility of life in prison."

Defining "possibility of life in prison" by the statutory maximum also provides for consistent interpretation of the word "punishable." In article I, section 20, "punishable" modifies "offenses." As explained above and in *Toney*, our Supreme Court has consistently explained that class A felonies are "punishable" by life in prison. *See also State v. Moretti*, 193 Wn.2d 809, 831, 446 P.3d 609 (2019) ("Under RCW 9A.20.021, class A felonies are punishable by a maximum of life in prison even for people who are not persistent offenders."); *State v. Hacheney*, 160 Wn.2d 503, 533, 158 P.3d 1152 (2007) ("First degree murder is a class A felony, punishable by life in prison."); *State v. Pang*, 132 Wn.2d 852, 896, 940 P.2d 1293 (1997) (explaining that first degree arson, a class A felony, is punishable with a life sentence under RCW 9A.20.021).

Here, Sargent asks us to interpret article I, section 20 to require courts to determine that an *individual* might be punished with life in prison in their particular circumstances. However, this ignores the construction of the constitution: because "punishable" modifies "offenses," our courts must look to the class of crime a defendant is charged with to determine whether it is punishable by the possibility of life in prison, not whether the individual—or their particular conduct—is punishable. Likewise, adopting Sargent's definition could undermine the court's reasoning wherever a maximum sentence is at issue, and render our courts' analysis in each *Blakely* and *Apprendi* case nugatory by replacing a clear reference to the statutory maximum

11

with the complex and variable framework of the SRA.[11]  Thus, we conclude that the plain language of the phrase "punishable by the possibility of life in prison" supports that it is a term of art reference the statutory maximum sentence under RCW 9A.20.021.

    2.  *Historical Context*

Sargent argues that the legislative history of the article I, section 20 amendment shows that the legislature intended to limit denial of bail to what Sargent calls "extreme circumstances" and not to all class A felonies.  Br. of Petitioner at 9-10.  The historical context of the amendment makes it clear that the legislature intended a more liberal application of when bail may be denied when compared to the original constitutional text.

As stated above, we review the historical context of the provision for guidance in interpreting its meaning.  *Barton*, 181 Wn.2d at 155.  When proposing the amendment to article I, section 20, the legislature's Committee on Judiciary proposed the following language:

> All persons charged with crime shall be bailable by sufficient sureties, except . . . when a person is charged with an offense involving the intentional death of another, the intentional infliction of great bodily harm on another, a choate sex offense for which the maximum sentence is the possibility of life in prison, or an offense that may result in a mandatory life sentence without the possibility of release upon conviction, when the proof is evident, or the presumption great, subject to such standards of release on bail as shall be determined by the legislature.

Engrossed Substitute House Joint Res. (ESHJR) 4220 S.E. AMS Jud S5062.1, Committee on Judiciary; Pet. Attachment I.

---

[11] As our Supreme Court noted in *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 509 n.6, 198 P.3d 1021 (2009), "Calculation of offender scores has become a very difficult, complex, and time consuming process made more complex each time the SRA is amended."

This language was not adopted in the final resolution. ESHJR 4220 (Mar. 11, 2010); Sargent argues that because the legislature adopted the current wording, and not the text proffered by the Committee on Judiciary, it is clear that the legislature's intent was that courts deny bail only in the "extreme circumstances" explicitly listed in the proposed text. Br. of Petitioner at 9-10. However, the opposite inference is more likely: that the legislature rejected the proposed language because it was too limiting, and wrote the amendment in a way to allow trial courts more flexibility and discretion.

This conclusion is supported by the Final Bill Report for ESHJR 4220[12] and the House Bill Report on Engrossed Substitute House Bill 4220 as Passed by the Legislature.[13] Both documents state that the "[o]ffenses for which the maximum sentence is the possibility of life in prison include class A felonies, third strike offenses for persistent offenders, and second strike offenses for persistent sex offenders." Resp't Appendix B, C. This aligns with the historical context of the amendment.[14]

As explained in section A above, the amendment to article I, section 20 at issue here was put forward by the legislature in 2010, following the 2009 killing of four police officers in Lakewood by Maurice Clemmons.[15] *Barton*, 181 Wn.2d at 152-53. Our Supreme Court

---

[12] Resp't Appendix B; http://lawfilesext.leg.wa.gov/biennium/2009-10/Pdf/Bill%20Reports/House/4220-S.E%20HBR%20FBR%202010.pdf?q=20210907174228.

[13] Resp't Appendix C; http://lawfilesext.leg.wa.gov/biennium/2009-10/Pdf/Bill%20Reports/House/4220-S.E%20HBR%20PL%202010.pdf?q=20210907174228.

[14] The voter pamphlet on the ballot measure provided no illuminating guidance.

[15] Throughout the drafting process, the legislature referred to the bill as "the Lakewood law enforcement memorial act." SHJR 4220 S. AMH Hurs H4990.1, H. Amd. 1028, Representative Hurst; SHJR 4220 S. AMH Silv 030, Representative Hope; SHJR 4220 S. AMH Hope Silv 032,

reviewed the facts of that incident in *State v. Allen*, 182 Wn.2d 364, 369-70, 341 P.3d 268

(2015):

> This tragic story began in May 2009 when officers responded to reports that Clemmons was throwing rocks through his neighbors' windows. Clemmons responded violently when officers arrived at the scene, and he was arrested for punching officers. He posted bail in November 2009, the month of the shootings.
>
> Shortly after his release, Clemmons attended Thanksgiving dinner at his aunt's house, where he expressed animosity toward the police. Specifically, he announced that if the police arrived to look for him, he would kill them and then go across the street to the elementary school and commit further acts of violence. Clemmons brandished a handgun while he described these acts.

Three days later, Clemmons shot and killed the four police officers. *Allen*, 182 Wn.2d at 370.

Our Supreme Court later explained that it was "[i]n response to this tragedy [that] the legislature proposed a constitutional amendment to article I, section 20 that would make bail *more difficult to obtain* for a person awaiting trial for a crime that would be punishable by life in prison." *Barton*, 181 Wn.2d at 152-53 (emphasis added). Put another way, viewed in the context of the murders Clemmons committed while released on bail, it appears the amendment was intended to increase the ability of a trial court to deny bail before trial. The historical context of the amendment weighs in favor of concluding that the legislature's manifest purpose in adopting the amendment was to allow courts more flexibility to deny bail and not be confined to only capital crimes or the limited circumstances of the SRA. Accordingly, we hold that whether an offense is punishable by the possibility of life in prison under article I, section 20 is determined by the statutory maximum sentence for the charged crime.

---

H. Amd. 1044, Representatives Hurst and Hope; ESHJR 4220 S.E. AMS Jud S5177.2, Committee on Judiciary.

C.      *"Limitations as Shall be Determined by the Legislature"*

Next, Sargent argues that the SRA is a "limitation" on article I, section 20 as "determined by the legislature." Br. of Petitioner at 8, 10. We disagree.

As noted above, article I, section 20 states, in pertinent part:

Bail may be denied for offenses punishable by the possibility of life in prison upon a showing by clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons, *subject to such limitations as shall be determined by the legislature*.

(Emphasis added).

Sargent argues that the SRA is an express limitation on the court's authority to deny bail, contemplated by the article I, section 20. He reasons that if we adopt the State's interpretation of the constitution, all class A felonies would be eligible for requests for pretrial detention without bail. Sargent appears to argue that courts could then deny bail routinely, when denial should be limited to what Sargent calls "extreme circumstances." Sargent argues that article I, section 20 should therefore not apply to all class A felonies and instead only to those felonies where a life sentence is subjectively possible under the SRA.

However, the constitution contains an additional factor in article I, section 20 that addresses Sargent's concern: a trial court must determine by clear and convincing evidence that the defendant has a propensity for violence that creates a substantial danger to any persons.

Additionally, no court has held that the SRA places any "limitation" on the Washington constitution. And a reading of the plain language of article I, section 20 does not support this interpretation. The phrase "subject to such limitations as shall be determined by the legislature" modifies the opening stanza of the sentence: "Bail may be denied for offenses punishable by the possibility of life in prison." A limit by the legislature placed on either bail denial or "the

15

possibility of life in prison" is not contained within the SRA. Instead, as explained above, the SRA refers back to RCW 9A.20.21 when discussing prison terms. RCW 9.94A.506(3). Thus, the legislature has already placed clear limitations on what offenses are "punishable by the possibility of life in prison;" they are listed as class A felonies.[16]

Likewise, as explained above, the historical context of the amendment makes it clear that the legislature intended a relatively liberal application of when bail may be denied. This would not be the case if the constitution was limited by the SRA. Sargent argues that only aggravated first degree murder, certain sex offenses, and persistent offenders may be punishable by a life sentence under the SRA, and only defendants facing those charges may be denied bail. But Sargent's argument is not supported by the historical record. We can infer from the historical context that the legislature proposed the amendment to article I, section 20 to help prevent a repeat of the type of tragedy Clemmons inflicted. Sargent's proposed limitations under the SRA would prevent a trial court from having the flexibility to deny bail in a situation like that in Clemmons's case.

Furthermore, limiting article I, section 20 to the confines of the SRA would make a portion of the provision superfluous. There would be no need for a court to make a determination about the "propensity for violence" a defendant poses "to the community or any persons." It would be clear from the crime charged: aggravated first degree murder, most sex offenses, and defendants with a record of persistent offenses would all demonstrate a likelihood

---

[16] Moreover, it would be nonsensical to hold that the SRA places a limit on bail because the SRA is specific to sentencing: a post-conviction procedure. Bail is a pre-trial matter governed under chapter 10.21 RCW: Bail Determinations under Article I, Section 20—Conditions of Release. It is likely that the legislature would place any limit on when bail may otherwise be denied under that statute.

of future danger to the community. Because we do not interpret the constitution to make a portion superfluous, we do not limit article I, section 20 by the SRA. Doing so would obviate the trial court's discretion to deny bail where "clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons" in circumstances beyond those three proposed by Sargent. Accordingly, we hold that the SRA is not a "limitation" on article I, section 20, as "determined by the legislature."

## II. PROPENSITY FOR VIOLENCE

Sargent also argues that the State did not show by clear and convincing evidence that Sargent had a "propensity for violence that creates a substantial likelihood of danger to the community or any persons" as required by article I, section 20. Br. of Petitioner at 10. We disagree.

### A.  *Trial Court's Statutory Authority under RCW 10.21.040*

Sargent argues that the trial court's order to detain Sargent without bail exceeds the trial court's authority under RCW 10.21.040. Sargent argues that the trial court's findings that Sargent had a propensity for violence were statutorily barred because RCW 10.21.040 applies only where a defendant's charges are punishable by the possibility of life under article I, section 20. Because we hold that Sargent's attempted first degree murder charge was punishable by life under the statutory maximum, we disagree.

No. 55696-1-II

Because Sargent argues that the trial court's denial of bail violated a constitutional provision, we review the trial court's determination de novo.[17] *Barton*, 181 Wn.2d at 163. When interpreting a statute, we consider the statute's plain language. *In re Pers. Restraint of Brooks*, 197 Wn.2d 94, 100, 480 P.3d 399 (2021). Where the statute's language is subject to only one interpretation, our inquiry ends. *Brooks*, 197 Wn.2d at 100.

RCW 10.21.040, which mirrors article I, section 20, and provides, in pertinent part:

> If, after a hearing on offenses prescribed in Article I, section 20 of the state Constitution, the judicial officer finds, by clear and convincing evidence, that a person shows a propensity for violence that creates a substantial likelihood of danger to the community or any persons, and finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community, such judicial officer must order the detention of the person before trial.

Contrary to Sargent's argument, RCW 10.21.040 provides him no additional protection beyond that which is defined in article I, section 20. The plain language of the statute states that the trial court must order pretrial detention for "offenses prescribed in article I, section 20." Article I, section 20 states that a court may deny bail for offenses "punishable by the possibility of life in prison." As explained in Part I above, class A felonies are punishable by the possibility of life in prison. Thus, class A felonies are "offenses prescribed in article I, section 20" as stated in RCW 10.21.040. Accordingly, the trial court properly conducted a bail hearing under RCW 10.21.040.

---

[17] The State argues that we review the trial court's factual determination for an abuse of discretion. Br. of Resp't at 8 citing *State v. Garza*, 150 Wn.2d 360, 366, 77 P.3d 347 (2003). However, the *Barton* court made it clear that our review is de novo when the appellant argues that the trial court's decision violated article I, section 20. *See also State v. Jorgenson*, 179 Wn.2d 145, 150, 312 P.3d 960 (2013) ("Constitutional issues are reviewed de novo."); *cf. State v. Banuelos*, 91 Wn. App. 860, 861-62, 960 P.2d 952 (1998) (noting that a trial court's decision on bail forfeiture is overturned only for abuse of discretion).

18

B.      *Clear and Convincing Evidence of a Propensity for Violence*

Sargent argues that the State did not show by clear and convincing evidence that Sargent has a propensity for violence because the State relies on unproven accusations.  We disagree.

As stated above, article I, section 20 broadly provides that a trial court may deny bail where there is "clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons."  RCW 10.21.060 defines the specific procedure and rules for the bail hearing.  It states, in pertinent part:

> The defendant must be afforded an opportunity to testify, to present witnesses, to cross-examine witnesses who appear at the hearing, and to present information by proffer or otherwise.  *The rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing.*  The facts the judicial officer uses to support a finding that no condition or combination of conditions will reasonably assure the safety of any other person and the community must be supported by clear and convincing evidence of a propensity for violence that creates a substantial likelihood of danger to the community or any persons.

RCW 10.21.060(3) (emphasis added).

"Clear and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable."  *State v. K.A.B.*, 14 Wn. App. 2d 677, 696, 475 P.3d 216 (2020); *see also Colorado v. New Mexico*, 467 U.S. 310, 316, 104 S. Ct. 2433, 81 L. Ed. 2d 247 (1984).  Thus, if the State shows it was highly probable that Sargent shows a propensity for violence that creates a substantial likelihood of danger to the community or any persons, and finds that no condition or combination of conditions will reasonably assure the safety of any other person and the community, then it follows that the trial court properly denied him bail.

Sargent argues that the State did not show by clear and convincing evidence that Sargent has a propensity for violence because the State relies on unproven accusations.  But, as stated

above, the normal rules of evidence do not apply at bail hearings. Although Sargent correctly states that he is cloaked with the presumption of innocence, he ignores that the trial court does not weigh the evidence regarding a defendant's guilt when making a bail determination, but rather focuses on facts relating to the safety of the community or individuals. Thus, relying on unproven accusations to deny bail is permitted as a precautionary measure to protect the public.

Here, the State showed that it is highly probable that Sargent has a propensity for violence. According to the State, the following occurred: Sargent attacked Edema with a hammer. Edema fought off Sargent and knocked the hammer away, but Sargent produced a second hammer and continued the attack. Edema knocked the second hammer away, at which point Sargent attacked him with a knife. After Edema overpowered Sargent again, Sargent smashed a teacup over Edema's head. This shows that Sargent continuously attacked Edema, resorting to whatever makeshift weapon was closest at hand. This record of the attack, when paired with the letter the State alleged Sargent wrote stating his intention to "rid his sister of the darkness" in her life and apparently referring to Edema as a "demon," show that Sargent has a propensity for violence that created a substantial likelihood of danger to Edema, a person in the community. Pet. Attachment F at 6.

Furthermore, the State also shows that Sargent's family fears for their safety. His sister Powell stated Sargent had been violent his whole life and had tried to kill her in 2008. The State also alleged that Sargent had been kicked out of his brother Jonathan's home and that Jonathan declined to speak to police because he feared for the safety of his wife and children should Sargent be released from custody. When combined with Sargent's alleged violent acts and

20

troubling statements, this shows that it is therefore highly probable that Sargent has a propensity for violence that creates a substantial likelihood of danger to the community or any persons.

C.      *Conditions to Reasonably Assure the Safety of the Community*

Finally, Sargent argues that the trial court imposed sufficient conditions on Sargent to reasonably assure the safety of the community. We disagree.

As explained above, a trial court must deny bail under RCW 10.21.040 if it finds that "no condition or combination of conditions will reasonably assure the safety of any other person and the community." RCW 10.21.050 defines the factors a court must take into account to determine whether conditions of release "will reasonably assure the safety of any other person and the community." These include:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence;
>
> (2) The weight of the evidence against the defendant; and
>
> (3) The history and characteristics of the defendant, including:
> (a) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings;
> (b) Whether, at the time of the current offense or arrest, the defendant was on community supervision, probation, parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under federal, state, or local law; and
> (c) The nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

RCW 10.21.050.

Here, the trial court placed multiple conditions on Sargent before his bail hearing. The trial court issued domestic violence no-contact orders prohibiting Sargent from contacting Powell or Edema. The trial court also ordered Sargent to surrender all weapons. Sargent filed a

declaration of non-surrender and stated he did not have any firearms or other dangerous weapons.

But it is unlikely that this combination of conditions will reasonably assure the safety of the community. First, the no-contact orders are enforceable only post-hoc, and place no physical restrictions on someone who rampaged against another person with two hammers, a knife, and a teacup. Second, the no-contact order does not protect Jonathan, who also expressed a fear of Sargent. Third, the trial court ordered Sargent to surrender his weapons and Sargent's statement that he does not have any firearms is inconsequential. The record of Sargent's alleged attack does not show that access to firearms was a problem, but rather that Sargent turned to the use of everyday household items. If he was willing to attack with an instrument as pedestrian as a teacup, it is highly probable that not having access to firearms will dissuade Sargent from attacking again. Thus, we hold that the State showed by clear and convincing evidence that Sargent shows a propensity for violence and that no combination of conditions would reasonably protect members of the community.

## CONCLUSION

We hold that the statutory maximum defining which crimes are "punishable by the possibility of life in prison" for the purposes of article I, section 20 of the constitution is defined by RCW 9A.20.021 and not a subjective sentence under the SRA. We further hold that the trial court here properly denied Sargent bail because the State showed by clear and convincing evidence that Sargent shows a propensity for violence that creates a substantial likelihood of danger to the community or any persons, and that no condition or combination of conditions

would reasonably assure the safety of any other person and the community.  Accordingly, we deny Sargent's petition.

_Worswick, J._
Worswick, J.

We concur:

_Maxa, J._
Maxa, J.

_Glasgow, ACJ_
Glasgow, A.C.J.